CAROL MORRISON, administratrix,[1] vs. JUDITH LENNETT
& others,[2] trustees,[3]
(and a companion case[4]).

Suffolk. April 5, 1993. - July 19, 1993.

Present: LIACOS. C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Report. *Charity. Nominee. Trust*, Personal liability of trus-
tee. *Corporation*, Charitable corporation, Officers and agents.

This court discharged a judge's report of his pretrial ruling limiting the
amount of damages recoverable by the plaintiff in two civil actions,
where the record was insufficient to permit a decision of the issue as to
all defendants. [859]

Civil claims were properly brought against the trustees of a so-called nomi-
nee trust, but claims purportedly brought against the trust itself were
not maintainable. [859-860]

This court expressed the view that the $20,000 statutory damages limita-
tion contained in G. L. c. 231, § 85K, on the tort liability of charitable
corporations applied to the trustees, in their representative capacity, of
a nominee trust created for the purpose of holding legal title to a chari-
table corporation's real property. [860-862]

General Laws c. 231, § 85K, does not limit the individual tort liability of
trustees of a charitable trust. [862-864]

An employee of a charitable corporation is not entitled to the benefit of the
limitation contained in G. L. c. 231 § 85K, on the tort liability of char-
itable corporations. [864]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on October 27, 1988.

---

[1] Of the estate of Patricia Morrison.

[2] Demita Frazier, Syvalia Hyman, III, and Joyce King.

[3] Of O.U.R. Trust. The defendant trustees were sued individually as
well. The trust is also a defendant.

[4] Carol Morrison, administratrix, vs. Judith Lennett & others, trustees.

The cases were consolidated for trial and were reported to the Appeals Court by *Hiller B. Zobel*, J. The Supreme Judicial Court granted a request for direct review.

*R. Keith Partlow* for the plaintiff.

*Robert M. Payton* for the defendants.

GREANEY, J. The plaintiff is the administratrix of the estates of two persons who died in a fire on premises owned by O.U.R. Trust (trust), a so-called nominee trust, and occupied by Casa Myrna Vazquez, Inc. (C.M.V.), a charitable corporation formed pursuant to G. L. c. 180 (1990 ed.). C.M.V. operates a battered women's shelter on the premises. The plaintiff brought two actions in the Superior Court against numerous defendants, alleging negligence and gross negligence in the maintenance of the premises, and seeking damages for pain and suffering and wrongful death. The actions were consolidated in the Superior Court. The defendants sought a pretrial ruling[5] that the $20,000 statutory damages cap contained in G. L. c. 231, § 85K (1990 ed.), on the tort liability of charitable organizations applied to all the defendants in the case.[6]

A judge in the Superior Court, based on a stipulation of facts agreed to by the parties, ruled that the limitation on damages contained in § 85K applied to all the defendants. On the parties' joint motion, the judge reported this interlocutory ruling to the Appeals Court. See Mass. R. Civ. P. 64, 365 Mass. 831 (1974); G. L. c. 231, § 111, second par.

---

[5]The parties state that the issue concerning the application of G. L. c. 231, § 85K, was raised in a motion for partial summary judgment. The docket indicates that a motion in limine, rather than a motion for summary judgment, was filed.

[6]General Laws c. 231, § 85K (1990 ed.), provides, in pertinent part, as follows: "It shall not constitute a defense to any cause of action based on tort brought against a corporation, trustees of a trust, or members of an association that said corporation, trust, or, association is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs."

(1990 ed.). We granted the plaintiff's application for direct appellate review. We conclude that the report must be discharged, but we comment on the underlying issues, because they have been briefed by the parties and their proper resolution seems reasonably clear despite the factual ambiguities in the record. See *Brown* v. *Guerrier*, 390 Mass. 631, 632-633 (1983).

1. A judge may report an interlocutory ruling which the judge believes "so affects the merits of the controversy that the matter ought to be determined by the appeals court before any further proceedings in the trial court." G. L. c. 231, § 111, second par. Mass. R. Civ. P. 64. See *Globe Newspaper Co.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.*, 412 Mass. 770, 772 (1992); *Cusic* v. *Commonwealth*, 412 Mass. 291, 293 (1992). Such a report should be reserved for novel and difficult issues, the appellate decision of which may expedite resolution of the case. See J.W. Smith & H.B. Zobel, Rules Practice § 64.3, at 50-51 (1981). Further, a report of an interlocutory ruling should "be accompanied by a record that gives an appellate court a basis to exercise its independent judgment of the validity of the judge's determination of [the reported ruling]." *Globe Newspaper Co.* v. *Massachusetts Bay Trans. Auth. Retirement Bd.*, *supra* at 773.

The ruling reported in this case concerns only a possible cap on the measure of damages recoverable by the plaintiff. It does not concern the defendants' liability on the various claims. Further, the stipulation of facts filed by the parties is sketchy at best. The entire record is insufficient to permit a complete decision of the limits of liability of all defendants. The report must therefore be discharged. We nonetheless comment, in a general way, on the ruling concerning the extent of the defendants' liability. For this purpose, we accept as accurate the allegations in the complaint. *Id.*

2. The complaint contains claims against the trust, and against four persons, as trustees and as individuals. With the exception noted in the margin, a trust is not a legal entity

which can be sued directly.[7] See *Swenson* v. *Horgan*, 341 Mass. 153, 154 (1960); *Larson* v. *Sylvester*, 282 Mass. 352, 357-358 (1933). See also J.R. Nolan, Civil Practice § 158, at 208-209 (1992); G.G. Bogert, Trusts and Trustees § 712, at 265 (rev. 2d ed. 1982). The claims against the trust itself are not maintainable.

3. We consider whether the trustees,[8] in their representative capacities, may claim the benefit of the damages cap contained in G. L. c. 231, § 85K. The trust is described as a nominee trust, that is, "an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties." *Johnston* v. *Holiday Inns, Inc.*, 595 F.2d 890, 893 (1st Cir. 1979). "Unlike in a 'true trust', the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of . . . the beneficiaries." Birnbaum, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass. L.Q. 364, 365 (1976). See *Penta* v. *Concord Auto Auction, Inc.*, 24 Mass. App. Ct. 635, 639-640 (1987); Malaguti, Hazardous Use of Nominee Realty Trust, 1 MSL L. Rev. 63, 65 (1993). A nominee trust is often used to hold legal title to real estate so that the identity of the trust beneficiary may remain undisclosed. Birnbaum, *supra* at 365; Malaguti, *supra* at 63-64.

The declaration establishing the trust provides that the trustees are to act solely at the direction of the beneficiary, and the beneficiary, listed on a separate schedule of benefi-

---

[7]By statute, a business trust may be sued directly "for debts and other obligations or liabilities contracted or incurred by the trustees, or by the duly authorized agents of such trustees." G. L. c. 182, § 6 (1990 ed.). A business trust is defined as "a trust operating under a written instrument or declaration of trust, the beneficial interest under which is divided into transferable certificates of participation or shares." G. L. c. 182, § 1 (1990 ed.). This definition does not apply to the trust in this case.

[8]It is unclear from the record whether all four of the individual defendants were trustees of the trust on October 28, 1985, the date of the fire. We would expect that only those persons who were serving as trustees on or before that date would be subject to possible liability for failing to remedy conditions on the premises alleged, in part, to have caused the injuries to the plaintiff's decedents. See *Swenson* v. *Horgan*, 341 Mass. 153, 154 (1960).

cial interests which is on file with the trustees, is not disclosed. (The stipulation of facts also does not indicate the identity of the beneficiary of the trust. We assume, as have the parties, that C.M.V. is the beneficiary of the trust.) It appears that, as a shelter for battered women and children, C.M.V. preferred not to have record ownership of the premises in its name so that it could conceal the location of the shelter and its clients. It further appears that C.M.V. regularly dealt with the premises as though it were the actual owner. Through its staff members, C.M.V. raised the funds needed to purchase the premises and to renovate the structure thereon. Additionally, C.M.V. approved the renovations and paid the contractor, and, subsequently, C.M.V. sought public funds for additional renovations. It would further appear, from the terms of the declaration of trust, that any actions taken by the trustees with respect to the premises always were undertaken on the basis of directions from C.M.V. The trust is, therefore, a classic nominee trust, with its trustees possessing only the barest incidents of ownership.

The plaintiff maintains that, because the trust has not been registered as a charitable trust and the declaration of trust contains no reference to a charitable purpose, the trustees, in their representative capacities, are not entitled to the protection afforded by G. L. c. 231, § 85K, and that, through the trustees, the total assets of the trust may be reached if the plaintiff succeeds in proving liability. We disagree. Section 85K shields charitable organizations from tort liability in excess of $20,000 for torts committed in "the course of any activity carried on to accomplish directly the charitable purpose" of the organization. See *Harlow* v. *Chin*, 405 Mass. 697, 715-716 (1989); *English* v. *New England Medical Ctr.*, 405 Mass. 423 (1989), cert. denied, 493 U.S. 1056 (1990). The purpose of the statutory limitation on damages "is to protect the funds [and other assets] of charitable institutions so they may be devoted to charitable purposes." *English* v. *New England Medical Ctr.*, *supra* at 429. While we have expressed concerns "about the paltriness of the $20,000 cap," *id.* at 426, we have sustained § 85K against a

variety of challenges. *Id.* The statute must be given the scope intended for it by the Legislature. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 63-64 (1983).

We think that there is a sufficient identity of interests between the trust and C.M.V., that the trustees, in their representative capacities, are protected by the limitation on damages conferred on C.M.V. by § 85K. The premises were purchased with C.M.V. funds, and C.M.V. occupied and managed the premises from the date of purchase. Record title to the property was placed in the names of the trustees for a legitimate purpose, and with the clear and demonstrated intent that C.M.V. continue to control the premises. The property (and the concealment of its location) was considered essential to C.M.V.'s performance of its charitable function. In prior decisions, involving nominee provisions in trust instruments, this court has disregarded the trustees' record ownership of the property and liability has been imposed directly on the beneficiaries. See *First Nat'l Bank* v. *Chartier*, 305 Mass. 316, 320-321 (1940); *Frost* v. *Thompson*, 219 Mass. 360, 365-366 (1914). See also Birnbaum, *supra* at 368 (there is logic in treating the beneficiaries of a nominee trust "as the true owners of the property for the purposes of liability as well as benefit"). Similarly, where a statutory limitation on damages protects the beneficiary of a nominee trust (in this case, C.M.V.), the beneficiary reasonably can be regarded as the true owner, and the limitation should apply to property held in trust for the beneficiary.

4. The complaint also states claims against the trustees individually. The trustees contend that § 85K shields them from personal liability in excess of $20,000. They rely in particular on the language in § 85K, which provides that "trustees of a trust" are protected by the limitation. For her part, the plaintiff argues that the defendants are trustees of a nominee and not a charitable trust. She further maintains that trustees of a nominee trust are agents of the beneficiary, and it has been established that § 85K does not protect agents of a charitable organization from unlimited personal liability. See *Mullins* v. *Pine Manor College, supra* at 63-64.

We need not decide whether the defendants properly can be considered to be agents of C.M.V., because, in our opinion, it is obvious that the provisions of § 85K do not shield a trustee of a charitable organization from unlimited personal liability.

As has been noted, a trust generally cannot be sued directly, but its assets may, in certain circumstances, be reached by a suit naming the trustees in their representative capacities. Section 85K therefore refers to suits against "trustees of charitable trusts" because they are the only proper parties to a suit when a plaintiff seeks to impose liability on a charitable trust which allegedly has conducted its activities in a tortious manner. It is an accepted principle of statutory construction that words and phrases used in a statute should be construed by reference to their associated terms in the statutory context. *Commonwealth* v. *Baker*, 368 Mass. 58, 68 (1975). *Hodgerney* v. *Baker*, 324 Mass. 703, 706 (1949). Section 85K, which limits the liability of charitable corporations, as well as the liability of trustees of charitable trusts, does not purport to limit the individual liability of a charitable corporation's officers or board members. See note 6, *supra*. It is illogical to assume that, with respect to personal liability, the Legislature intended the trustees of a charitable trust to stand on a different footing from the officers or board members of a charitable corporation.

The enactment of St. 1987, c. 345, inserting G. L. c. 231, § 85W, is consistent with our interpretation. This section provides, in pertinent part, that no "officer, director or trustee of any nonprofit charitable organization . . . shall be liable for any civil damages as a result of any acts or omissions relating solely to the performance of his duties as an officer, director or trustee; provided, however, that the immunity conferred by this section shall not apply to any acts or omissions intentionally designed to harm or to any grossly negligent acts or omissions." It can be assumed that new legislation alters existing law. See *Marshfield* v. *Springfield*, 337 Mass. 633, 637-638 (1958). If G. L. c. 231, § 85K, already protected trustees of charitable organizations from personal

liability, it would not have been necessary to enact § 85W as a separate statute to accomplish the same purpose.[9]

5. The parties have stipulated that, on the date of the fire, one of the defendants was the president of C.M.V., as well as a trustee of the trust. An employee of a charitable organization is not entitled to the benefit of the limitation on damages contained in § 85K which protects the employer. *Mullins* v. *Pine Manor College, supra* at 63-64. It is not necessary that the complaints identify one defendant as president of the charitable organization so long as that defendant is sued individually, the parties stipulate as to her employment as president on the relevant date, and she is fairly notified of the nature of the plaintiff's claims. See *Handy* v. *Penal Insts. Comm'r of Boston*, 412 Mass. 759, 763-764 (1992); *Garrity* v. *Garrity*, 399 Mass. 367, 369 (1987).

6. The report is discharged, and the case remanded to the Superior Court for further proceedings.

*So ordered.*

---

[9]It has not been suggested that St. 1987, c. 345, which was enacted after the events on which the plaintiff's claims are based, has any application to this case.