McHugh, J.
I. BACKGROUND
This is an action in which plaintiff seeks to recover damages from a variety of defendants for a variety of alleged wrongdoings. In essence, the plaintiff and most of the defendants are shareholders in Ken’s Foods, Inc. (“Ken’s”), a very successful close corporation and most of the allegations of plaintiffs complaint have to do with various alleged breaches by defendants of their fiduciary or other obligations to him. Plaintiff, along with several of the defendants, also is a beneficiary of MIP Realty Trust (“the Trust”).
Defendants Sherin & Lodgen, a law firm, and Morton B. Brown, a partner in that firm, were attorneys for Ken’s and for the Trust. Insofar as it concerns these defendants, the gist of plaintiffs complaint is that both the firm and Mr. Brown committed malpractice by failing to represent plaintiffs interest effectively in connection with the Trust’s negotiations to purchase a piece of property known as Lot 14 and by participating in a scheme to freeze plaintiff out of a beneficial interest in that property.[1]
Defendants maintain that plaintiff cannot recover because there was no attorney-client relationship between them. They say that they were counsel for Ken’s and counsel for the Trust but were not counsel to *505 plaintiff individually. Indeed, their unchallenged affidavits show that they never received instructions from plaintiff individually and had virtually no contact with him. They have moved for summary judgment on that ground.
II. APPLICABLE LAW
Until recently, the principles governing summary judgment in Massachusetts were those the Supreme Judicial Court had articulated in Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Under those principles,
[t]he party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he [or she] would have no burden on an issue if the case were to go to trial... If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment. (Footnote omitted.)
In the recent case of Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991), however, the Court embraced the principles set forth by the Supreme Court of the United States in Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under those principles,
a party who moves for summary judgment has the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial.[2] That burden is not sustained by the mere filing of the summary judgment motion or by the filing of a motion together with a statement that the other party has produced no evidence that would prove a particular necessary element of this case. The motion must be supported by one or more of the materials listed in rule 56(c) and, although that supporting material need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest, it must demonstrate that proof of that element at trial is unlikely to be forthcoming.
Kourouvacilis, supra, 410 Mass. at 714. As a consequence, there are now two ways in which the party moving for summary judgment may meet the burden imposed by Mass.R.Civ.P. 56. The first of those follows traditional Massachusetts law:
[T]he moving party may submit affirmative evidence that negates an essential element of the nonmoving party’s claim.
Kourouvacilis, supra, 410 Mass. at 715 quoting Celotex Corp. v. Catrett, supra, 477 U.S. at 331-32 (Brennan, J., dissenting). Second, however,
the moving party may demonstrate to the court that the nonmoving party’s evidence is insufficient to establish an essential element of the nonmoving party’s claim ... If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law . . . Plainly, a conclusory assertion that the non-moving party has no evidence is insufficient . . . Such a “burden” of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment . . . Rather, ... a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.

Id.

Put another way,
a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he [or she] demonstrates, by reference to material described in Mass.RCiv.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.
Kourouvacilis, supra, 410 Mass. at 716.
In applying that standard,
[w]here a moving party properly asserts that there is no genuine issue of material fact, “the judge must ask himself [or herself] not whether he [or she] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A judge’s mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment.
Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Those, then, are the principles the Court must apply to the motion defendant has filed here.
III. DISCUSSION A. REPRESENTATION OF THE CORPORATION.
Plaintiff first claims that because they represented Ken’s and because Ken’s is a close corporation, defendants represented him individually. Not so. As the Supreme Judicial Court stated in the context of a case dealing with a family corporation similar to Ken’s, “[a]n attorney for a corporation does not... by virtue of that capacity become an attorney for... [the corporation’s] officers, directors or shareholders.” Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 522, cert. denied, 404 U.S. 894 (1989). Moreover, acceptance of plaintiffs argument would violate the maxim that a corporate veil cannot be pierced by one who created it. See Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 626 (1990). On the present record, there is no *506 genuine issue of material fact that, if resolved in plaintiffs favor, would permit a reason to conclusion that the characteristics of the relationship between the lawyers and the corporation was such that the lawyers undertook representation of plaintiff as well.
B. REPRESENTATION OF THE TRUST
Analysis of the question whether defendants represented plaintiff because plaintiff was a beneficiary of the Trust is more complex. To be sure, lawyers who represent a trust typically represent the trustees, not the beneficiaries. See generally Spinner v. Nutt, Civil Action No. 92-5194-B (Suffolk Superior Court, February 11, 1993); Favata v. Rosenberg, 436 N.E.2d 49, 51 (Ill.App. 1982).
Undisputed, however, is that the Trust was a “nominee” trust. A nominee trust is
“an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties.” . . . “Unlike in a ‘true trust,’ the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of. . . the beneficiaries.” ... A nominee trust is often used to hold legal title to real estate so that the identity of the trust beneficiary may remain undisclosed.
Morrison v. Lennett, 415 Mass. 857, 860 (1993) (citations omitted). Accordingly, the trustees of a nominee trust “are frequently seen as agents for the principals’ convenience rather than as trustees in the more familiar fiduciary sense.” Apahouser Lock & Security Corp. v. Carvelli, 26 Mass.App.Ct. 385, 388 (1988). Accord Restatement (Second) of Agency, §14B, comment j; Birnbaum & Monahan, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass. L.Q. 364, 367-68 (1976).
Given those principles, plaintiff argues that because the trustees of a nominee trust are agents for the beneficiaries, an attorney who acts for the nominee trust at the behest of the trustees is acting for the beneficiaries, not the trustees alone. Amplifying that argument, plaintiff argues that, at bottom and regardless of other obligations with which it is encumbered, the relationship between an attorney and a client is contractual. Hendrickson v. Sears, 365 Mass. 83, 86 (1974). Plaintiff therefore argues that the general rules applicable to contracts entered by agents for disclosed principals apply to the relationship between the beneficiaries of a nominee trust and attorneys the trustees hire. Under those rules, as plaintiff sees it, the attorney’s obligation runs individually to each of the principals, i.e., the beneficiaries, see generally Restatement (Second) of Agency, §292, unless the principals are specifically excluded. Id., §293.[3]
That view has merit. As stated, a nominee trust is not a true trust and the relationship between the trustees and beneficiaries is essentially that of principal and agent. The trustees typically, if not invariably, have no power to exercise their own independent judgment and exist solely for the purposes of carrying out the principals’ business and preserving their anonymity.
Another view, however, is that the attorney is an agent of the agent, i.e., the trustees, and has no contractual relationship with the beneficiaries. See Restatement (Second) of Agency §§5, 77 & comment b, 79. That view, too, has merit. An agent for multiple principals has the authority to act only for their joint account unless the agency agreement provides otherwise. See Restatement (Second) of Agency §41(1). As between herself and an attorney for the trust, the agent frequently is in the better position to know what authority she has. Indeed, when a nominee trust is involved, the attorney may not even know who all the principals are. Although the relationship of principal and agent therefore characterizes the relationship between the trustees and the beneficiaries of a nominee trust, agency principles do not inescapably lead to a conclusion that the beneficiaries are the parties to the contract between the trustees and attorney for the trust and therefore entitled to bring a claim of malpractice against the attorney for failing to represent their individual interests properly.
The precise question this case poses has not yet been the subject of any appellate decisions in the Commonwealth. In my view, however, the answer to that question turns, not on the label one attaches to the business entities under consideration, but on the specifics of the arrangements under which defendants were engaged and the manner in which they thereafter interacted with the Trust in carrying out their responsibilities. Those are highly fact-bound questions that the present record does not fully answer.
ORDER
In light of the foregoing, it is hereby ORDERED that defendants’ motion for summary judgment should be, and it hereby is DENIED.

 The malpractice claim is expressly set out in Counts VII, XVI and XVII of the Complaint. Counts II, III. IV, V, XII and XIII allege other claims flowing from the firm’s and Mr. Brown’s alleged failure to represent plaintiff properly. Both sides, however, assert that the existence of an attorney-client relationship forms the basis for all claims and thus have only discussed the presence or absence of that relationship in the present motion.

 Kourouvacilis did not change the proposition that the moving party must show the absence of any genuine issue of material fact before the nonmoving party will be required to file any affidavit-based response of any kind. Smith v. Massimiano, 414 Mass. 81, 85-86 (1993).

 is undisputed on the present record that the trustees were, at the time the attorney-client relationship was formed, at least agents for “partially disclosed” principals. Restatement (Second) of Contracts, §4(2).