Sosman, J.
Plaintiff has brought the present action against the school she formerly attended, various teachers at the school, the principal, and the Trustees of the school complaining that she was raped by one of her teachers and then subjected to various forms of harassment and retaliation after she reported the rape. The Trustees have moved to dismiss or, in the alternative, for summary judgment on all claims against them. For the following reasons, the Trustees’ motion for summary judgment is ALLOWED.
Facts
Viewed in the light most favorable to plaintiff, the facts are as follows:
Plaintiff was a student at Notre Dame Academy, a private secondary school for girls located in Worcester. The Academy is owned and operated by Notre Dame Academy at Worcester, Inc., a charitable corporation which qualifies as tax exempt under 26 U.S.C. §501(c) (3). The By-Laws of the corporation provide that there shall be a minimum of five “members” of the corporation, consisting of “the incorporators and other such Sisters of Notre Dame as may be elected by them.” Article IV. The duties of the members include the following:
The members shall enforce all rules and by-laws, shall have direct and general supervision and control of the funds and activities of the Corporation, and shall at their annual meeting elect the trustees. They shall also appoint the Administrator of the Academy after consultation with the Board of Trustees.
Article VII.
The Board of Trustees consists of up to twenty-one persons, elected by the members of the corporation for a one-year renewable term. The duties of the Board of Trustees are as follows:
The Board of Trustees shall manage and direct the affairs and business of the Institution owned by the Corporation, and shall have the power and authority to do all acts and perform all functions not inconsistent with these by-laws or with any action taken by the membership of the Corporation. Their powers shall include, recommendations to the members of candidates to serve as administrator of the Academy, the appointment of committees as hereinafter provided for, and the making of such rules and regulations as shall from time to time be deemed necessary or desirable for the welfare of the Institution.
Article VIII, Section 3. The Board of Trustees has four standing committees: an Executive Committee (which has authority to transact regular business during the interim between full Board meetings), a Planning and Development Committee (to “study possibilities for growth and future directions of the institution”), a Building and Grounds Committee (to make recommendations “on matters pertaining to the buildings and grounds”), and an Administration and Finance Committee (responsible for preparing and submitting the budget). Article VIII, Sections 5 through 9. The individual Trustees are volunteers, serving without compensation.
With regard to the administration of the Academy, the By-Laws provide for an Administrator as follows:
The Administrator shall be a Sister of Notre Dame appointed by the Corporation from recommendations of the Board of Trustees and the direct executive representation in the management of the Institution. She shall be given the necessary authority and held responsible for the administration of the Institution in all its activities and departments, subject only to such policies as may be adopted by the Board of Trustees or by any of its committees to which it has delegated power for such action. The Administrator shall act as the duly authorized representative of the Board of Trustees in all matters in which the Board of Trustees has not formally designated some other person for that specific purpose. The Administrator shall be responsible for carrying out all policies established by the Board of Trustees.
Article IX.
Since 1976, the Administrator of Notre Dame Academy has been Sr. Ann Morrison. According to Morrison’s affidavit, the Board of Trustees does not control the operation of the Academy, nor does it *5 control the staff or faculty of the academy. The Board of Trustees does not have the authority to hire or fire any member of the staff or faculty. Morrison’s affidavit asserts, consistent with the wording of the By-Law, that she is responsible for the operation of the Academy and that the faculty and staff are answerable to her. She has full discretion to hire, discipline or fire any faculty member. Morrison is in turn answerable to the members of the Corporation who hired her, not to the Board of Trustees. Morrison’s affidavit also describes the actual functions of the Board of Trustees as advisory, with particular emphasis on financial matters, including fundraising and the cultivation of community involvement.
Plaintiff began her studies at Notre Dame Academy as a freshman in September 1993. In her complaint, she alleges that defendant Kallin Johnson, a music teacher at the Academy, began meeting with her privately and fondling her during the fall of 1993. This activity allegedly culminated in Johnson’s forcible rape of the plaintiff in January 1994. Johnson then ceased seeing the plaintiff.
In December 1994, after a school assembly that included a presentation on the subject of sexual violence, plaintiff reported the rape to a peer counselor at the Academy. The peer counselor spoke to plaintiffs guidance counselor, who then relayed the report to the Administrator, defendant Morrison. She alleges that, in retaliation for her accusation of rape, she has been subjected to various forms of harassment and intimidation by Morrison and other faculty members at the Academy. Specifically, she complains that she was denied her normal privileges in the Academy’s Arts department, including expulsion from the school play, the dance ensemble and the concert chorale. She complains that she was subjected to an aggressive interrogation by the Academy’s lawyer, defendant Kevin Byrne. Plaintiff complains that no disciplinary action was taken against Johnson. [1]
Plaintiff filed the present action and obtained a preliminary injunction enjoining defendants from dismissing or removing her from the Arts Department. Following that injunction, plaintiff alleges that she continued to be subjected to harassment and intimidation. She complains that she was, despite the injunction, not allowed to participate in a Concert Chorale performance. She did perform in a recital of the Dance Ensemble, but was allegedly deliberately ignored by the faculty who were in charge of the event and was not provided with a costume. She complains that defendant Evelyn McKenna, a teacher at the Academy, told her students that, if they were approached by the media, they should say that plaintiff had fabricated the allegations against Johnson and that the school backed Johnson. She complains that defendant Patricia Mulford, another teacher, accused plaintiff of lying and that, when plaintiff refused to retract her allegations, Mulford refused to call on plaintiff in class and treated her in a “hostile” manner. She complains that faculty members were encouraged to wear a pin in the shape of a G-clef, with a white ribbon attached, as a symbol of support for Johnson. She also complains that defendant Morrison expressed support for Johnson. She complains that a petition drafted by defendant McKenna was posted in the main foyer of the Academy, inviting people to sign their names as a demonstration of support for Johnson. As a result of these actions, .plaintiff withdrew from the Academy in the spring of 1995.
Discussion
In her Second Amended Complaint, consisting of 228 paragraphs comprising thirty-two counts, plaintiff has brought claims against Johnson, the Academy, the corporation that owns the Academy, the Administrator, the faculty members, the Boston Province of the Sisters of Notre Dame, and the Trustees for assault and battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, sexual harassment (G.L.c. 214, §1C), violation of civil rights (G.L.c. 12, §1II), violation of equal rights (G.L.c. 93, §102), federal civil rights remedies for gender-motivated violence (42 U.S.C. §13981), breach of contract, and unfair and deceptive trade practices (G.L.c. 93A, §9). Claims against the Trustees are made against them in their official capacity (Counts XX through XXVII) on the theoiy that they, as Trustees of a trust, employed Johnson, Morrison and the other faculty members and that they, on behalf of a trust, were party to the contract between the Academy and the plaintiffs mother. Claims are also made against the Trustees individually on a theory of “vicarious liability” for the alleged wrongdoing of the members of the Academy faculty (Count XXXI) and for their individual “negligence” (Count XXXII). The theories underlying the claim against the Trustees for their own negligence are that they a) negligently hired and failed to properly supervise Morrison, b) “fail[ed] to stop the faculty and staff of the Academy from engaging in a prolonged and concerted effort to harass and intimidate the Plaintiff and force her to leave the school,” and c) “fail[ed] to put in place procedures for addressing accusations of misconduct made by students against teachers.” The Trustees have moved for summary judgment on all claims against them in both their official and individual capacities. Each of the theories against the Trustees will be addressed separately.
I. Claims against the Trustees in their Official Capacity (Counts XX through XXVII)
The claims made against the Trustees in their official capacity were brought on the assumption that there was a trust, of which the defendants were the trustees, and that that trust was the entity that hired and supervised the faculty and entered into the contract to provide educational services to the plaintiff. In order to sue that purported trust, plaintiff brought her *6 claims against the Trustees in their official capacity as trustees of the trust. Discovery has now revealed that there Is no such “trust” and that the term “Trustee” is simply the honorary title given to these defendants by the corporation’s By-Laws. As there is no trust entity to be sued through its trustees, the claims against the Trustees in their official capacity fail to state a claim.[2]
II. Claims against the Trustees Individually for “Vicarious Liability” (Count XXXI)
Plaintiff alleges that the individual Trustees “were aware” of the tortious and wrongful acts being perpetrated by the faculty, that they “failed to stop persons under their control from committing repeated torts and civil rights violations against the minor Plaintiff,” that they thereby “ratified and approved of the commission of said torts and civil rights violations,” and that they are therefore vicariously liable for the damage plaintiff has allegedly suffered.
“An officer of a corporation who takes part in the commission of a tort by the corporation is personally liable for resulting injuries; but an officer who takes no part in the commission of the tort is not personally liable to third persons for the torts of other agents, officers or employees of the corporation.” Addis v. Steele, 38 Mass.App.Ct. 433, 440 (1995), quoting Fletcher, Prívate Corporations §1137, at 300 (1994). The perpetrators of the alleged torts and civil rights violations in the present case were the Administrator (defendant Morrison) and other members of the faculty, all of whom are agents and employees of Notre Dame Academy at Worcester, Inc. The individual Trustees, just as individual corporate officers, are not vicariously liable for what other agents and employees of the corporation do. They are liable for their own participation in the commission of any tort or other violation, but they are not vicariously liable for the conduct of others who work for the same corporation. It is the corporation itself that bears that vicarious liability, not the individual Trustees of the corporation.
Plaintiff argues that the By-Laws’ provision identifying the Administrator as the “representative” of the Board of Trustees makes her the “agent” of the Trustees and thus gives rise to vicarious liability on the part of the Trustees for the Administrator’s tortious or wrongful conduct. Plaintiffs argument seeks to ignore the remainder of the By-Laws and to take a single provision grossly out of context.
The By-Laws unambiguously declare that the Administrator is hired by the members of the corporation, not by the advisory Trustees. See By-Laws, Article VII and Article IX. The Trustees’ only role in the hiring of the Administrator is that they may recommend candidates for consideration by the corporate members. Article VIII, §3. The By-Laws then confer on the Administrator the authority to administer the Academy “in all its activities and departments, subject only to such policies as may be adopted by the Board of Trustees” or one of its duly authorized committees. Article IX. While the By-Laws provide that the Board of Trustees “shall manage and direct the affairs of [the Academy],” their power to do so is limited to those acts that axe “not inconsistent with these by-laws or with any action taken by the membership of the corporation.” Id. Thus, while the Trustees “manage and direct” the Academy, they may not do so in a way that would abrogate the broad authority given to the Administrator in Article IX, as that would be “inconsistent” with the By-Laws and with the corporation’s selection of the Administrator.
Consistent with the By-Laws, the Administrator testifies that she is not controlled by or answerable to the Trustees with respect to her management and operation of the Academy and its faculty. She is subject only to such “policies” as the Trustees may adopt, and thus must operate the Academy in accordance with any such “policies.”[3] The Administrator is clearly the agent and servant of the corporation itself. She is not the agent or servant of the Trustees, who do not hire her, fire her or supervise her, but who may only set “policies” that she must implement.
The fact that the Administrator is also the “representative of the Board of Trustees in all matters in which the Board of Trustees has not formally designated some other person for that specific purpose” (Article IN) does not give the Trustees control over her. It simply means that, if she acts on a matter that would normally be within the Trustees’ functions, she does so with the authority to speak and act for the Trustees. However, when she is taking actions within her own authority to “administ[er] the [Academy] in all its activities and departments,” she is not acting as a representative of the Trustees. The reference in Article IX to the Administrator’s acting as the “representative” of the Board of Trustees does not,, in light of the other provisions in the By-Laws, transform her into the agent of the Trustees with respect to the entire panoply of her administrative functions within the Academy. The conduct complained of in the present case — the refusal to discipline or fire Johnson, the failure to prevent faculty members from expressing their support for Johnson, the expulsion (or constructive expulsion) of plaintiff from performing groups, and her failure to protect and support plaintiff in making her complaints about Johnson — are all acts that fall well within the Administrator’s own independent authority to run the Academy. They are not undertaken “on behalf of’ the Board of Trustees. Nothing in the ByLaws makes the Trustees individually liable on any “vicarious liability” theory with respect to the conduct of the Administrator that is at issue in the present case.
Finally, any theory of “vicarious liability” against the individual Trustees would also have to overcome the immunity granted them by G.L.c. 231, §85K. The statute provides as follows:
*7 No person who serves as a director, officer or trustee of an educational institution which is ... a charitable organization, qualified as a tax-exempt organization under 26 USC 501(c)(3) and who is not compensated for such services, except for reimbursement of out of pocket expenses, shall be liable solely by reason of such services as officer, director or trustee for any act or omission resulting in damage or injury to another, if such person was acting in good faith and within the scope of his official functions and duties, unless such damage or injury was caused by willful or wanton misconduct.
Notre Dame Academy at Worcester, Inc. is a charitable tax-exempt organization, and the Trustees serve without compensation. Count XXXI seeks to hold them liable “solely by reason of such services as . . . trustee” of that organization. On a theory of purely vicarious liability, there can not be any issue of good or bad faith on the part of the Trustees. Nor can vicarious liability be characterized as “willful or wanton.” The immunity granted in §85K is intended to protect officers and trustees who volunteer their time and services to nonprofit educational institutions. The imposition on them of vicarious liability for the alleged torts committed by faculty members at the school would be totally contrary to the legislative purpose behind §85K.
Relying on Morrison v. Lennett, 415 Mass. 857, 863 (1993), plaintiff argues that §85K does not apply to claims brought against the Trustees individually. The issue in Morrison was whether the $20,000 limit on a charitable organization’s own liability, set forth in the first paragraph of §85K, applied to a claim brought against an individual trustee of a trust. Morrison was not construing the second paragraph of §85K that is at issue in this case. Indeed, part of the court’s reasoning as to why the $20,000 limit was not applicable to claims against individual trustees was the fact that the legislature had subsequently protected such individuals in another section, G.L.c. 231, §85W, a section which is comparable to the second paragraph of §85K.[4]The provisions of the second paragraph of §85K expressly apply to claims against a “person who serves as a director, officer or trustee of an educational institution.” Nothing in Morrison alters the immunity that is expressly granted to the individuals described in the second paragraph of §85K. Morrison only holds that if such individuals are not immune (pursuant to either the second paragraph of §85K or §85W), they are not entitled to the protection of the $20,000 limit on liability that is accorded to the charitable organization itself.
III. Individual Liability of Trustees for Their Own Negligence (Count XXXII)
Plaintiff has also made a claim against the Trustees individually for their own alleged negligence. Plaintiff claims that the individual Trustees breached a duty of care owed to her by 1) negligently hiring and failing to supervise defendant Morrison, 2) failing to stop the alleged harassment and intimidation being perpetrated on plaintiff by the faculty, and 3) failing to adopt “procedures for addressing accusations of misconduct made by students against teachers.”
As discussed above, the Trustees did not hire Morrison, nor did they have the authority to supervise her. As to the rest of the faculty, plaintiff can point to no evidence even suggesting that the individual trustees had the authority or the ability to control individual faculty members.[5]
With regard to plaintiffs final negligence claim, the assertion that the individual Trustees are liable for failing to adopt procedures with respect to student complaints of faculty misconduct, plaintiff has shown that the Board of Trustees did have the authority to adopt procedures. The Trustees may make “such rules and regulations as shall from time to time be deemed necessary or desirable for the welfare of the institution.” Article VIII, §3.
However, the passive failure to adopt such procedures prior to the incident involving plaintiff is not, as a matter of law, “willfill or wanton misconduct” or bad faith. At most, plaintiff could argue that the Trustees should have foreseen that a student making a complaint about a faculty member might be subjected to various forms of recrimination and that they should have made rules about how such complaints would be handled so as to minimize the potential for such recrimination. That is at best a case of negligence. It is not “bad faith,” and it is certainly not “willful or wanton misconduct.” Indeed, “negligence and willful and wanton conduct are so different in kind that words properly descriptive of the one commonly exclude the other.” Commonwealth v. Welansky, 316 Mass. 383, 400 (1944), quoting Miller v. United States Fidelity & Guaranty Co., 291 Mass. 445, 447 (1935). The immunity conferred by G.L.c. 231, §85K immunizes these defendants from liability for any negligent failure to adopt procedures to handle student complaints.
ORDER
For the foregoing reasons, defendants’ motion for summary judgment is ALLOWED and defendants The Trustees of Notre Dame Academy, David M. Banks, Pamela M. Boisvert, Cushing D. Bozenhard, Claude B. Dufault, Richard J. Flynn, Maria H. Jacobson, Marie Kraus, SND, Robert P. Lombardi, John W. Lund, Suzanne M. Magaziner, Jeanne McDonald, Donald O. Maloney, Jr., John H. McCabe, William J. Mulford, Rev. George L. O’Brien, Frances O’Keefe, Harold Shapiro, Margaret W. Traína, and Kevin Byrne are entitled to judgment in their favor on the claims set forth in Counts XX through XXVII, XXXI and XXXII of plaintiffs Second Amended Complaint.

 There was a criminal investigation of the alleged sexual assaults. In November 1995, the grand jury returned a “No Bill” on the charges against Johnson.

 In Counts XX through XXVI, the plaintiffs claims are made against the Trustees based on the assertion that the individuals who committed the alleged tortious acts were “employed by the Defendants Notre Dame Academy, the Trustees of Notre Dame Academy; and/or Notre Dame Academy at Worcester, Inc." As will be discussed further below, neither Morrison nor any member of the faculty was “employed” by the Trustees, acting in any capacity, and the Trustees would therefore not be liable for their misconduct on any theory of respondeat superior. Similarly, the contract to provide educational services was not entered into by the Trustees, acting in any capacity, and the Trustees can not be held liable for any breach of that contract (Count XXVII).

 Under the By-Laws, even a failure to abide by a policy set by the Trustees would not give the Trustees the ability to fire or discipline the Administrator. The Trustees could certainly protest to the members that the Administrator was not, in their view, properly implementing their policies, but it would be up to the corporate members to fire or discipline the Administrator for any such failure to perform her duties.

 G.L.c. 231, §85W provides that no “officer, director or trustee of any nonprofit charitable organization . . . shall be liable for any civil damages as a result of any acts or omissions relating solely to the performance of his duties as an officer, director or trustee; provided, however, that the immunity conferred by this section shall not apply to acts or omissions intentionally designed to harm or to any grossly negligent acts or omissions.”

 Indeed, nothing short of detailed, immediate control over the faculty could have prevented the faculty conduct that plaintiff complains of. The Trustees obviously do not have control over such things as which students perform in a dance recital or chorus concert, what symbolic items of jewelry a faculty member wears, which students get called on in class, etc.