# United States Court of Appeals
## For the First Circuit

No. 13-1907

RHONDA G. MILLS,

Plaintiff, Appellant,

v.

U.S. BANK, NA, as Trustee for the Lehman XS Trust Mortgage
Pass-Through Certificates, Series 2007-4N; ONEWEST BANK FSB
individually and as successor to IndyMac Bank, F.S.B.;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro,  U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Kayatta, Circuit Judges

Rockwell P. Ludden, with whom Ludden Kramer Law, PC was on
brief, for appellant.
David G. Thomas, with whom Russell P. Plato and Greenberg
Traurig, LLP were on brief, for appellees.

May 27, 2014

**HOWARD, Circuit Judge**.  Following the 2011 foreclosure on her home, plaintiff Rhonda Mills filed this suit against defendants U.S. Bank, N.A. ("U.S. Bank"), OneWest Bank, F.S.B. ("OneWest"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), raising a potpourri of challenges to OneWest's authority to foreclose on her property.  On appeal from the district court's dismissal of her suit for failure to state a claim, Mills primarily takes issue with the district court's reliance on our decision in Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282 (1st Cir. 2013).  Finding Culhane to be on point, we affirm.

## I.

On October 6, 2006, Mills refinanced her home in Mashpee, Massachusetts, executing an adjustable rate note (the "note") in favor of MortgageIT, Inc. ("MortgageIT") for $376,000 and also granting a mortgage to MERS.  The mortgage contract identified MortgageIT as the lender and MERS as the mortgagee, "acting solely as a nominee for Lender and Lender's successors and assigns."  The mortgage provided MERS with "only legal title" to Mills's property, giving it the right to foreclose and sell the property "as nominee for Lender and Lender's successors and assigns."

MERS, as we explained in Culhane, "was formed by a consortium of residential mortgage lenders and investors desiring to streamline the process of transferring ownership of mortgage loans in order to facilitate securitization."  Id. at 287.  Joining

-2-

MERS enables lenders to "name MERS as the mortgagee in mortgages that they originate, service, or own." Id. MERS itself acts solely as a "nominee" for the owner or servicer of a mortgage, giving MERS legal title to the mortgage but leaving it with no beneficial interest in the loan. Id. When a note is sold by one MERS member to another, MERS memorializes the sale in its database but remains the mortgagee of record, thereby avoiding the time and expense of publicly assigning the mortgage to a new noteholder. Id.; see also Butler v. Deutsche Bank Trust Co. Ams., No. 12-2108, 2014 WL 1328296, at *3 (1st Cir. Apr. 4, 2014). On the other hand, when a note is sold to a nonmember, MERS assigns the mortgage to the new noteholder or its designee. Culhane, 708 F.3d at 287.

Like Culhane, this case illustrates the function served by MERS. Mills's note was sold by MortgageIT on the secondary market and changed hands several times before ultimately being deposited into the Lehman XS Trust, Mortgage Pass-Through Certificates, Series 2007-4N (the "Trust"), of which U.S. Bank was trustee; no corresponding assignments were made of legal title to the mortgage. Mills, meanwhile, began struggling to keep up with her loan payments, and applied to IndyMac, F.S.B. ("IndyMac"), the loan servicer at the time, for a loan modification. IndyMac approved Mills's loan modification application in December 2008, and Mills signed, notarized, and returned the modification agreement. Unfortunately for Mills, however, in March 2009 IndyMac

-3-

was succeeded as loan servicer by OneWest, which failed to honor the modification.  On April 23, 2009, MERS executed a document assigning the mortgage to OneWest, which subsequently recorded the assignment with the Barnstable Land Court Registry.  Finally, on January 21, 2011, OneWest foreclosed Mills's mortgage and sold her property at public auction to U.S. Bank.

Mills filed this lawsuit on May 23, 2012 in Barnstable Superior Court; the defendants removed the case to the District of Massachusetts a week later.  Following the plaintiff's submission of an amended complaint, the defendants moved for dismissal for failure to state a claim.  On March 28, 2013, the district court granted the defendants' motions to dismiss and denied Mills's motion to amend her complaint and add an allegation to her claim under Mass. Gen. Laws ch. 93A.  Mills subsequently filed a motion for reconsideration, which the district court denied without comment.  This appeal followed.

**II.**

**A.      Dismissal**

**1.    Validity of Assignment**

Under Massachusetts statute, only "the mortgagee or his executors, administrators, successors or assigns" can exercise a statutory power of sale (which Mills's mortgage granted) and foreclose without prior judicial authorization.  Mass. Gen. Laws ch. 183, § 21; see also id. ch. 244, § 14; Culhane, 708 F.3d at

-4-

290; <u>U.S. Bank Nat'l Ass'n</u> v. <u>Ibanez</u>, 941 N.E.2d 40, 50 (Mass. 2011). Consequently, "[a]ny effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure under these statutes is void." <u>Ibanez</u>, 941 N.E.2d at 50 (internal quotation marks omitted). Like the plaintiff in <u>Culhane</u>, Mills contends that the foreclosing entity, OneWest, was never assigned valid legal title, rendering the foreclosure void. In other words, Mills's complaint represents a "challenge [to] a foreclosing entity's status qua mortgagee," which Mills has standing to raise. <u>Culhane</u>, 708 F.3d at 291. We review <u>de</u> <u>novo</u> the district court's dismissal of Mills's complaint for failure to state a claim. <u>Mass. Ret. Sys.</u> v. <u>CVS Caremark Corp.</u>, 716 F.3d 229, 237 (1st Cir. 2013).

Before turning to the merits of Mills's claim, we briefly review our prior analysis of the MERS system in <u>Culhane</u>, which, notwithstanding Mills's protestations to the contrary, we ultimately conclude is dispositive of this case. In <u>Culhane</u>, we rejected the plaintiff's contention that the nominal designation of MERS as holder of the mortgage "was a nullity because MERS never owned the 'beneficial half of the legal interest' in the mortgage," leaving MERS with nothing to assign to the foreclosing entity. 708 F.3d at 291. On the contrary, we concluded that "the MERS framework, which customarily separates the legal interest [in the mortgage] from the beneficial interest [in the underlying debt],

corresponds with longstanding common-law principles regarding mortgages." Id. at 292.

We elaborated that "[t]he mortgage, in a title theory state like Massachusetts, transfers legal title to the mortgaged premises from the mortgagor to the mortgagee for the sole purpose of securing the loan," leaving the mortgagee with "bare legal title to the mortgaged premises, defeasible upon repayment of the loan (because the mortgagor owns the equity of redemption)." Id. We noted that under Massachusetts law, a note and the underlying mortgage need not be held by the same party. Id.; see also Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1124 (Mass. 2012). We further explained that the MERS framework, in which the mortgage and note are held by separate entities from the outset, creates an implied equitable trust in which the mortgagee "holds bare legal title to the mortgaged premises in trust for the noteholder" and "[t]he noteholder possesses an equitable right to demand and obtain an assignment of the mortgage." Culhane, 708 F.3d at 292. Absent a contrary provision in the mortgage itself, a mortgagee "may assign its mortgage to another party," and "need not possess any scintilla of a beneficial interest in order to hold the mortgage." Id. at 292-93.

Accordingly, we found that "MERS's role as mortgagee of record and custodian of the bare legal interest as nominee for the member-noteholder, and the member-noteholder's role as owner of the

beneficial interest in the loan, fit comfortably with each other and fit comfortably within the structure of Massachusetts mortgage law."  Id. at 293.  Our conclusion was bolstered by the terms of the mortgage contract itself, which (identical to the mortgage in this case) designated MERS as the mortgagee "solely as nominee for [the lender] and [its] successors and assigns."  Id.  As the lender's nominee, MERS held "title for the owner of the beneficial interest," and was therefore contractually authorized to transfer the mortgage at the direction of the designated loan servicer.  Id. In short, MERS validly held legal title to the mortgaged property and was doubly authorized (under both Massachusetts common law and the terms of the mortgage contract) to assign its interest to the foreclosing entity.

Mills's argument in this case, though not entirely duplicative of the unsuccessful challenge in Culhane, is a variation on the same theme.  Mills focuses primarily on the Massachusetts statute of frauds, Mass. Gen. Laws ch. 183, § 3, which requires assignments of mortgages and other interests in land to be placed in writing and signed by the assignor.  See Ibanez, 941 N.E.2d at 51.  More specifically, Mills avers that while "the Mills mortgage was securitized and therefore necessarily sold by way of 'true sale' at least twice before its final assignment to the Trust," none of these intermediary transfers were recorded. Instead, the sole recorded transfers of the mortgage were the

original mortgage contract between Mills and MERS and the final assignment from MERS to OneWest. Because the intermediary transfers were not recorded, concludes Mills's syllogism, the "chain of assignments" was broken and MERS had no interest to assign OneWest.

Without specifically addressing this statute of frauds-based argument, the district court found Culhane fatal to Mills's claim, citing our pronouncement that the MERS system "fit comfortably within the structure of Massachusetts mortgage law." We agree with the district court's conclusion, and we find that Mills's contentions to the contrary rest on a misperception of the MERS framework.

At the outset, we note that Mills's complaint does not allege that the mortgage (which evidences legal title to Mills's property) changed hands prior to securitization; instead, Mills's allegation is that the note (which evidences the beneficial interest) "was subsequently sold by MortgageIT on the secondary market and earmarked to become, through a series of transfers, part of a mortgage pool deposited into the [Trust]." This is hardly surprising, since MERS's very raison d'être "is its ability to remain mortgagee of record, possessing a legal interest in a homeowner's mortgage, while the beneficial interest in that accompanying note is transferred among MERS's member institutions." Butler, 2014 WL 1328296, at *3. Given the separability of the

-8-

mortgage and note under Massachusetts law, see Eaton, 969 N.E.2d at 1124, the transfer of the promissory note between MERS members does not affect legal title to the mortgage.  See Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 355-56 (1st Cir. 2013) (distinguishing "electronically track[ing] transfers of a mortgagors' [sic] promissory note" within the MERS registry from "the assignment and recordation of mortgage interests in a county registry of deeds"); Culhane, 708 F.3d at 292 ("[T]he transfer of the note does not automatically transfer the mortgage."); In re Marron, 455 B.R. 1, 7 (Bankr. D. Mass. 2011) ("The fact that the debtors' promissory note passed like a hot potato down a line of owners, . . . with no accompanying assignment of the note owner's beneficial interest in the mortgage, changes nothing.").[1]

Mills's statute of frauds-based argument, while less than a paragon of lucidity, appears to follow a narrower track than the broad challenges that we rejected in Culhane, Woods, and Butler. Rather than resting on the erroneous premise that the transfer of

---

[1] Mills suggests in passing that even if Massachusetts law allows for the note and mortgage to be held by different entities, the language of the mortgage contract here did not. Specifically, Mills points to a provision in the mortgage contract stating that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower," which she takes to mean "that the mortgage may be assigned with the note." We, however, have already rejected this reading as "jejune," noting that the language of the provision is "permissive and by no means prohibits the separation of the two instruments" and that the mortgage and note had in fact been "separated upon their inception." Culhane, 708 F.3d at 292 n.6.

the note entails a corresponding transfer of the separately-held mortgage as a matter of law, Mills scrutinizes the language of the mortgage contract in an apparent attempt to demonstrate that it did not in fact grant MERS legal title to the property. Specifically, Mills alleges that there is a "strident ambiguity" as to whether MERS is an "actual mortgagee" (i.e., "owner of legal title to the secured property") or merely "act[ing] in a representative capacity on behalf of the actual owner" of legal title. As we have recounted, the mortgage contract established MERS as mortgagee while also describing MERS as "acting solely as a nominee for Lender and Lender's successors and assigns." Mills claims that these provisions "place[] MERS in the impossible position of being both principal and agent with regard to the same mortgage at the same time."

Proceeding on the theory that MERS acted solely as an agent of the successive noteholders with no legal title to the property, Mills suggests that each intermediary transfer of the promissory note entailed a change of principals and thus a transfer of the mortgage from one principal to the next. Because these intermediary transfers were not recorded, continues the argument, the mortgage failed to move down the chain of principals. Any subsequent assignment by MERS on behalf of a principal who did not in fact validly receive title to the mortgage, Mills concludes,

-10-

"becomes a fraudulent act, the recording of which is not only meaningless but an affront to the democratic recording system."[2]

This theory rests on a flawed foundation -- indeed, upon the same premise that we invalidated in Culhane. Although Mills contends that "MERS acts solely in a representative capacity and owns nothing with regard to the mortgage loan," she herself acknowledges that we adopted a different view in Culhane, holding (in her words) that MERS "acts in an ownership capacity -- it actually owns the legal title to the secured property" and that "[b]ecause it remains the mortgagee throughout the securitization process, assignments are unnecessary."

We decline Mills's invitation to revisit our still-recent precedent. Contrary to Mills's claim of "strident ambiguity" as to MERS's status under the mortgage contract, Culhane makes clear that MERS validly serves both as the holder of "bare legal title as mortgagee of record" and as "nominee for the member-noteholder."

_____

[2] Mills offers the following illustration of her theory:

> In the MERS model, MERS is the agent for the originating lender, A. As such, assuming it has the authority to do so, MERS may transfer the mortgage from A to B. But that transfer is of an interest in land, and there must still [be] a writing . . . signed by the party to be bound in order to have any legal effect. And even though MERS may also act as B's agent, it cannot transfer the mortgage from B to C unless and until there has been a valid written assignment from A to B -- that is to say, without a valid assignment from A to B there is nothing for MERS to assign on behalf of B even though there is an agency relationship between MERS and B.

-11-

708 F.3d at 291, 293; see also Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352, 369 (D. Mass. 2011) ("[T]he notion that MERS is pejoratively 'two-faced' [as 'both principal and agent'] derives from a legal premise that is faulty in its understanding of MERS's interest in the mortgage.").  MERS's designation as nominee means that it "holds title for the owner of the beneficial interest," not, as Mills appears to suggest, that it lacks title altogether.  Culhane, 708 F.3d at 293; cf. Morrison v. Lennett, 616 N.E.2d 92, 94 (Mass. 1993) ("A nominee trust is often used to hold legal title to real estate so that the identity of the trust beneficiary may remain undisclosed."); Black's Law Dictionary 1149 (9th ed. 2009) (defining "nominee" as "[a] party who holds bare legal title for the benefit of others").  Because legal title to the mortgage remained vested in MERS and not in the noteholder, the intermediary transfers of the note in no way undermined the subsequent assignment of the mortgage from MERS to OneWest.  See Marron, 455 B.R. at 7 ("Through all of these transfers [of the promissory note] right up until it finally assigned the mortgage to HSBC, MERS remained the mortgagee in its capacity as trustee and as nominee for whomever happened to own the note.").

## 2.  Mass. Gen. Laws ch. 183, § 54B

Mills also avers that the assignment of her mortgage from MERS to OneWest ran afoul of Mass. Gen. Laws ch. 183, § 54B, which provides in pertinent part:

> [An] assignment of mortgage . . . if executed before a notary public . . . by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall be binding upon such entity and shall be entitled to be recorded . . . .

Mills claims that the statute "was misread and misapplied in such a way as to allow the non-holder of a mortgage to foreclose merely by having its agent 'purport' to act on their behalf." Once again, her position is foreclosed by Culhane, where we described the plaintiff's claim that "MERS was not the 'entity holding such mortgage' within the purview of section 54B" as "simply an old wine in a new bottle," premised on the already-refuted proposition that MERS did not validly hold the mortgage. 708 F.3d at 294. Mills's argument is of the same spoiled vintage as that in Culhane: here, too, we have already held that MERS possessed legal title to the mortgage at the time of assignment, invalidating Mills's § 54B claim.[3]

---

[3] Mills also raises cursory challenges under the Massachusetts Declaration of Rights, suggesting that "the interpretation and application of § 54B urged by the Appellees impinges upon the guarantees of substantive and procedural due process." This argument is inadequately developed, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), and in any event it, too, is "contingent on the plaintiff's core contention that MERS did not validly hold the mortgage at the time of its assignment to [OneWest]," Culhane, 708 F.3d at 295, which we have rejected.

-13-

### 3.    Miscellany

As a secondary challenge, Mills appears to suggest in the rather murky closing pages of her opening brief that OneWest may not "have been servicing the mortgage on the Trust's behalf." Only in her reply brief and at oral argument did Mills develop this argument into the more cogent argument that OneWest lacked authority to foreclose because it "did not own the note at the time of foreclosure." Mills has failed, however, to sufficiently unfold this argument on appeal. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983) ("[A]ppellant generally may not preserve a claim merely by referring to it in a reply brief or at oral argument.").[4]

---

[4] Nor in any event are we persuaded on the merits of this argument. Although Eaton held that a foreclosing entity must hold both the mortgage and the note (or act on behalf of the noteholder), that holding was prospective only and does not apply here, 969 N.E.2d at 1133, nor does its subsequent extension to "cases that were pending on appeal . . . when the rescript in Eaton issued," Galiastro v. Mortg. Elec. Registration Sys., 4 N.E.3d 270, 277 (Mass. 2014). And although Mills suggests that the terms of the mortgage contract required "that the person foreclosing must at the time of the foreclosure own both the note and the mortgage," we disagree. The provision in question provides that if the borrower's default is not cured, "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law." This provision is permissive; we do not read it as prohibiting the mortgagee from foreclosing without possession of the note.

-14-

We also treat as waived the plethora of additional embryonic arguments that Mills raises at the end of her opening brief and in portions of her reply brief, including perfunctory contentions that the mortgage loan was "toxic, predatory, and doomed to fail"; that "the securitization was not done in compliance with the trust agreements or New York law"; and that the assignment from MERS to OneWest was "signed by a known robo-signer." See Zannino, 895 F.2d at 17.

**B.      Leave to Amend**

Mills also challenges the district court's denial of her motion to amend her complaint and add an allegation that she sent a demand letter to the defendants pursuant to her claim under Mass. Gen. Laws ch. 93A.  The district court denied that motion on the ground of futility, "[b]ecause adding this allegation has no effect on the foregoing analysis of OneWest's authority to exercise the statutory power of sale."  Although we ordinarily review a district court's denial of leave to amend for abuse of discretion, see Manzoli v. Comm'r of Internal Revenue, 904 F.2d 101, 107 (1st Cir. 1990), we review de novo the district court's determination of futility, see Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  We find no error in the district court's conclusion.  Even with the proposed addition, Mills's Chapter 93A

claim still failed to satisfy Rule 12(b)(6), as it rested on the faulty premise that OneWest lacked authority to foreclose.[5]

### C.        Submission of Newly Discovered Evidence

Mills finally assigns error to the district court's failure to rule on her motion -- filed mere hours before the district court issued its dismissal order -- to submit newly discovered evidence.  In her opening brief, however, Mills alluded only in passing to "the newly discovered evidence of material discrepancies in both the assignment and the promissory note," and did not develop this argument until her reply.  It is accordingly waived.  <u>See</u> <u>Zannino</u>, 895 F.2d at 17; <u>Pignons S.A. de Mecanique</u>, 701 F.2d at 3.[6]

---

[5] To the extent that Mills suggests (mostly in her reply brief) that there were alternative bases for her Chapter 93A claim, such as "that she was given a predatory loan, qualified for a modification that OneWest refused to honor, and was never behind in her mortgage payments until she was instructed to stop paying in order to 'qualify' for her modification," she has failed to sufficiently develop her argument on appeal, and issues may not be raised for the first time in a reply brief.  <u>See</u> <u>Zannino</u>, 895 F.2d at 17; <u>Pignons S.A. de Mecanique</u>, 701 F.2d at 3.

[6] In any event, the import of the submitted evidence -- allegedly contradictory versions of the mortgage assignment from MERS to OneWest and of the promissory note -- is less than clear.  Although Mills claims various discrepancies between these versions, she fails to explain how these discrepancies implicate the documents' validity; instead, she merely engages in the sort of speculation (<u>e.g.</u>, "we cannot rule out the possibility of liberties having bee[n] taken that should not have been taken in a court of law") that we need not give weight under <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 555 (2007).

## III.

For the foregoing reasons, we **<u>affirm</u>** the district court's order granting the defendants' motion to dismiss and denying Mills's motion to amend her complaint.