SHAMROCK, INC. *vs.* FEDERAL DEPOSIT INSURANCE
CORPORATION.[1]

No. 92-P-1437.

Worcester. October 14, 1993. - March 2, 1994.

Present: KASS, PORADA, & IRELAND, JJ.

*Nominee. Trust,* Claims of creditor. *Real Property,* Attachment. *Fraudu-
lent Conveyance. Practice, Civil,* Judgment notwithstanding verdict.
*Consumer Protection Act,* Bank, Mortgage of real estate.

At the trial of claims to the proceeds of a mortgagee's sale of a parcel of
land, the record supported the judge's finding that a nominee trust that
held title to the parcel was not a sham, and consequently a creditor of
the trustees could not apply the trust property to their indebtedness.
[166-167]

Rule 50 (b) of the Massachusetts Rules of Civil Procedure establishes an
outer limit, ten days after entry of judgment, for a timely motion for
judgment notwithstanding the verdict in a civil action, but the rule does
not require judgment as a precondition for such a motion. [168-169]

At the trial of claims to the proceeds of a mortgage foreclosure sale of a
parcel of land, the judge appropriately concluded that the mortgage
was not a fraudulent conveyance, in violation of G. L. c. 109A, §§ 7 or
9, where the jury, in response to one of the five special questions pro-
pounded to them, found that the mortgagee had given fair considera-
tion for the mortgage. [169-170]

A judge's findings of fact warranted a dismissal of a businessman's claim
under G. L. c. 93A. [170]

---

[1]The legal action which resulted in the judgment we now review began
with a complaint on a promissory note by Shamrock, Inc., against Evelyn
J. Eresian and Ara Eresian, Jr. Thereafter, Heritage Bank for Savings, on
motion, was allowed to intervene in that action. On appeal, the only
tangible interests are those of the bank and Shamrock, Inc. During the
pendency of the appeal (on December 4, 1992), Federal Deposit Insurance
Corporation (FDIC) was appointed liquidating agent for Heritage Bank
for Savings and, on motion, was substituted as a defendant in place of the
bank.

CIVIL ACTION commenced in the Superior Court Department on April 13, 1989.

Claims to the proceeds of a mortgage foreclosure sale of real estate were tried before *Herbert F. Travers, Jr.*, J.

*Michael J. Reed* (*Raymond J. Reed* with him) for the plaintiff.

*E. Whitney Drake*, of the District of Columbia, for the defendant.

KASS, J. Both Shamrock, Inc., and Heritage Bank for Savings (to which we shall refer from time to time as "the bank" or "Heritage") made loans to Evelyn J. Eresian and Ara Eresian, Jr. The lenders contend over which is entitled to a fund of $76,000, produced by the mortgage foreclosure sale of premises at 10 King Street, Worcester. A judge of the Superior Court decided that the bank, as the holder of a first mortgage on 10 King Street, was lawfully entitled to the foreclosure proceeds and that a general attachment to the value of $115,344 obtained by Shamrock against property of the Eresians in Worcester did not provide Shamrock with a superior claim to the foreclosure proceeds. We affirm.

As set forth in note 1 to this opinion, Federal Deposit Insurance Corporation (FDIC) was appointed liquidating agent for the bank and has been substituted for the bank as Shamrock's only adversary of consequence in this appeal.[2] That substitution of FDIC for the bank presents a threshold question — not raised by any party — whether the presence of FDIC in the case causes us to lose jurisdiction. Unlike the situation in *McLaughlin* v. *Federal Deposit Ins. Corp.*, 415 Mass. 235, 236-237 (1993), here the appellant, i.e., Shamrock, filed an administrative claim on March 10, 1993, with the FDIC/Receiver, as required under 12 U.S.C. § 1821(d)(3)(B)(i) (Supp. II 1990). We stayed this appeal, so that FDIC might consider Shamrock's claim. FDIC denied Shamrock's claim on July 1, 1993, and, thereupon, it became appropriate for this case to proceed. See *Marquis* v. *Federal Deposit Ins. Corp.*, 965 F.2d 1148, 1151-1155 (1st

---

[2]The Eresians do not, as a practical matter, have a pecuniary interest in the appeal and did not file a brief.

Cir. 1992). Compare *Botschafter* v. *Federal Deposit Ins. Corp.*, 33 Mass. App. Ct. 595 (1992), *S.C.*, 416 Mass. 1004 (1993).

Although Shamrock has drawn a complex and diffuse factual background in its brief and record appendix, the essential facts are susceptible to simplification. Evelyn and Ara Eresian had borrowed $125,000 from Shamrock on January 28, 1988. The Eresians defaulted on that loan, and Shamrock took a variety of actions to collect the debt, including obtaining on April 18, 1989,[3] a prejudgment attachment (against land in Worcester County standing in the name of Evelyn Eresian and Ara Eresian, Jr.) of $115,344, the amount then claimed to be due Shamrock. That attachment was recorded in the Worcester registry of deeds on April 20, 1989.

Number Ten King Realty Trust came into existence through a declaration of trust made by Ara Eresian, Jr. almost a year earlier, on May 3, 1988. As its name suggests, that trust was formed so that it might acquire title to the premises at 10 King Street, as indeed it did by deed of William F. and Janet M. Poce, dated May 4, 1988. Both the declaration of trust and the deed were promptly recorded in the registry of deeds. The beneficiaries of the trust were Melanie C. Eresian and Eva Eresian. As drafted, the Number Ten King Realty Trust was a nominee trust, i.e., one as to which the beneficiaries exercised controlling powers, and the action which the trustee might take on his own was quite limited. See *Penta* v. *Concord Auto Auction, Inc.*, 24 Mass. App. Ct. 635, 639 (1987); *Apahouser Lock & Sec. Corp.* v. *Carvelli*, 26 Mass. App. Ct. 385, 388 (1988); *In re Grand Jury Subpoena*, 973 F.2d 45, 48 (1st Cir. 1992); Birnbaum & Monahan, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass. L.Q. 364, 366-368 (1976).

In April of 1989, Ara Eresian, Jr., then still the sole trustee of Number Ten King Realty Trust, undertook to obtain

---

[3]The witness block on the writ of attachment is dated April 18, 1989. The text of the writ says the attachment was approved by a judge of the Superior Court on April 19, 1989. Nothing turns on the difference.

from the bank more advantageous mortgage financing of the premises at 10 King Street as well as another property owned by Eresian interests, but not by Number Ten King Realty Trust. The bank made it a condition of the loan that Ara Eresian, Jr. and his mother, Evelyn J. Eresian, whom the bank apparently regarded as its customers in connection with the proposed loan, acquire title to 10 King Street and execute in their own names a mortgage note and mortgage deed, as well as other security documents, to the bank. Following that, the bank agreed in writing, Ara, Jr. and Evelyn might reconvey 10 King Street to the trust. Ara, Jr. furnished to the bank a trustee's certificate that he had been authorized and directed by all the beneficiaries of the trust to convey the 10 King Street premises to himself and Evelyn, individually and as tenants in common. Instruments conveying title in 10 King Street to Ara, Jr. and Evelyn, and then a mortgage to the bank were executed April 25, 1989, and a deed returning title to the trust, subject to the mortgage, was executed the next day, April 26, 1989. All documents were promptly recorded in the registry of deeds.

Shamrock's attachment of April 18, 1989, caught such real estate as stood in the name of Ara, Jr. and Evelyn on that date. That did not include 10 King Street, to which Ara, Jr. and Evelyn did not acquire their transitory title until one week later. Barring something out of the ordinary, Shamrock's attachment did not reach 10 King Street because an attachment does not cover after-acquired property, unless a court were expressly so to order. See Mass.R.Civ.P. 4.1(c), 365 Mass. 737 (1974). Cf. *Perivoliotis* v. *Eveleth*, 251 Mass. 444, 446 (1925).[4] Shamrock does not quarrel with that basic

---

[4] Under Mass.R.Civ.P. 4.1(c), "[n]o property may be attached unless such attachment . . . is approved by order of the court." Subparagraphs (f) and (g) of rule 4.1, require the plaintiff to persuade the court that the attachment is needed to satisfy a likely judgment, and that there is clear danger that the defendant will put the property to be attached beyond the reach of creditors. See *Aetna Cas. & Sur. Co.* v. *Rodco Autobody*, 138 F.R.D. 328, 331-332 (D. Mass. 1991). If a judge is to make an intelligent finding whether the property to be attached is too much or too little in light of the plaintiff's apparent needs, the property targeted for attachment must be identified. It is also a factor that an attachment places legal title

proposition but claims that the record does establish two quite out of the ordinary factors, viz., that the Number Ten King Realty Trust was a sham[5] and that the mortgage deed to Heritage was a fraudulent conveyance as against Shamrock. There was also a claim under G. L. c. 93A.

1. *The trust as sham.* Certain questions arising out of the case were placed before a jury, as the reader will learn in connection with the discussion of fraudulent conveyance, but the bona fide character of Number Ten King Realty Trust was not one of them. The trial judge expressly found the trust was not a sham, and that is a finding to which we owe deference unless, upon review of the record, we think it clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *Ward* v. *Grant*, 9 Mass. App. Ct. 364, 365 (1980). Far from being erroneous, we think the judge's finding on this score fully supported by the record. At all times material, the beneficial interest in the trust belonged neither to Ara, Jr. nor Evelyn Eresian, the persons who were indebted to Shamrock, but to Melanie C. Eresian and Eva Marie Eresian, who were sisters of Ara, Jr. The sisters, under the trust instrument, had untrammeled power of direction over the trust property. To the extent the trust was screening property from creditors, they would be creditors of the sisters, and those creditors might, indeed, have a basis for penetrating the screen and reaching the trust assets. See *State St. Bank & Trust Co.* v. *Reiser*, 7 Mass. App. Ct. 633, 636-638 (1979).

As to Ara, Jr., it was his duty under the trust instrument to deal with the trust res for the benefit of Melanie and Eva Eresian. There was no showing that the sisters had under-

---

in the attaching officer, pending discharge of the attachment. An attaching officer, e.g., the sheriff, cannot obtain through attachment a title the defendant does not possess.

[5]Shamrock includes considerable material in its record appendix about another trust, Number Fourteen Duxbury Realty Trust, of which Ara, Jr. was trustee and in connection with which parallel events occurred. As the money Shamrock seeks to reach flowed from the bank's foreclosure of the mortgage on real estate owned by Number Ten King Realty Trust, facts pertaining to the Number Fourteen Duxbury Realty Trust are not relevant.

taken any obligation, in whole or in part, to return the property to their brother. In such a case the trust might be disregarded. See Scott, Trusts § 63 at 361 (1987 ed.). Nor was evidence adduced that Number Ten King Realty Trust was established in May, 1988, for the purpose of evading the obligations of a particular debt to a particular creditor.[6] It is a perfectly usual employment of the trust device to place property in a safe harbor against the possibility of future rough financial seas, although the nominee trust would generally not be the form of choice for that purpose because of its susceptibility to penetration by creditors of the beneficiaries. In any event, Shamrock, as a creditor of Evelyn and Ara, Jr., could not apply to their debt property held by them solely as trustees. *Hussey* v. *Arnold*, 185 Mass. 202, 204 (1904).

2. *The fraudulent conveyance claim.* There were two counts in Shamrock's counterclaim which alleged that the mortgage to Heritage Bank for Savings was a fraudulent conveyance in relation to Shamrock. The first of those counts stated that the bank, when it made the mortgage loan and accepted the mortgage deed as security, knew that Evelyn and Ara, Jr. were in default on their loan from Shamrock and was aware of Shamrock's attachment against them.[7] That count expresses a claim under G. L. c. 109A, § 7, as inserted by St. 1924, c. 147, § 1.[8] The other count added

---

[6]By comparison, in the case of the other trust whose property was mortgaged to secure the April 25, 1989, loan from Heritage Bank for Savings (this was Number Fourteen Duxbury Realty Trust), the sisters, who had been the original beneficiaries of the trust, had assigned their beneficial interest to Ara, Jr. some ten months prior to the loan. That assignment, it should be added, was made subject to a reversion when an existing mortgage on 14 Duxbury Street to the West Newton Mortgage Co. was discharged. That discharge occurred on April 24, 1989, and one may suppose, therefore, that the beneficial interest in the Number Fourteen Duxbury Trust reverted to the sisters.

[7]Indeed, the bank necessarily would have become aware of the attachment against Evelyn and Ara, Jr. in connection with a title search of the properties being mortgaged, as to which they were trustees.

[8]Section 7 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

that, by reason of the mortgage to the Heritage Bank for Savings and the bank's permission to Evelyn and Ara, Jr. to make a second mortgage loan, they were rendered insolvent. That seems to be stating a claim under G. L. c. 109A, § 4, as inserted by St. 1924, c. 147, § 1, which declares as a fraud on creditors the making of a conveyance which renders the transferor insolvent, "if the conveyance is made or the obligation is incurred without a fair consideration."

In connection with the disposition of the fraudulent conveyance issue at trial there has developed a measure of procedural confusion. The fraudulent conveyance claims had been given to a jury on five special verdict questions. In response to those questions, the jury said, on the one hand, that the Eresians gave the mortgage with actual intent to defraud, hinder or delay Shamrock from collecting its claims against them, and that the bank received the mortgage with knowledge of the Eresians' intent. On the other hand, the jury also found that the bank gave fair consideration.

Immediately after the special verdict was returned, the bank filed a motion to vacate the answers of the jury and for judgment notwithstanding the verdict.[9] The judge thought the motion for judgment n.o.v. premature because he read Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974), as requiring the entry of a judgment before judgment n.o.v. might be sought. The rule provides that a party "[n]ot later than 10 days after entry of judgment . . . may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict." We think that the phrase "not later than 10 days after entry of judgment" establishes the outer limit for a motion for judgment n.o.v. but does not require judgment as a precondition. See *Director of Rev., Colorado* v. *United States*, 392 F.2d 307, 309-310 (10th Cir. 1968); *Jurgens* v.

---

[9]The bank had laid the procedural foundation for that motion by moving for a directed verdict at the close of the plaintiff's evidence and again at the close of all the evidence. See *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6, 8-9 (1983); *Hatton* v. *Meade*, 23 Mass. App. Ct. 356, 360-362 (1987).

*McKasy*, 905 F.2d 382, 386 (Fed. Cir. 1990), cert. denied, 502 U.S. 902 (1991); Wright & Miller, Federal Practice and Procedure § 2812 at 81-82 (1973 & Supp. 1993 at 27). The authorities cited deal with motions for a new trial under Fed.R.Civ.P. 59(b), but the ten-day rule inserted in rule 50(b) was intended to make that rule operate in a manner consistent with rule 59(b) and, therefore, the reasoning that legitimized prejudgment motions for a new trial under rule 59(b) is applicable to motions under rule 50(b). See Wright & Miller, Federal Practice and Procedure § 2537 at 602 & n.50. All this accords with common sense. It facilitates the conclusion of a case at the trial stage if the motion for judgment n.o.v., as here, is made promptly so that the party to which the jury verdict is favorable and the trial judge are apprised of the moving party's challenge while a final judgment is being fashioned and entered. Cf. *Delaney* v. *Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 402-403 (1989).

In fact, if not in form, the judge disposed of the case as if he had allowed Heritage's motion for judgment n.o.v.; i.e., he set aside the jury's verdict and imported to the fraudulent conveyance aspect of the case his ultimate finding that the trust was a bona fide vehicle under which Ara, Jr. served as a trustee for his sisters' property interest. From that finding the conclusion followed that neither Evelyn, Ara, Jr., nor Heritage had, through the mortgage transaction, hindered, delayed, or defrauded a creditor of Ara, Jr. or Evelyn.

If the judge thought he was not free to grant judgment n.o.v., then he presumably acted under Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974), which required him to order the entry of a judgment in accordance with the jury's answers to special questions, resolving, if possible, any apparent dissonances in the answers so as to harmonize the answers with the evidence and the instructions to the jury. *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 800-801 (1987), and cases and authorities there cited. This the judge could do by recognizing that even if the effect of the mortgage transaction with Heritage were to prefer an existing mortgagee threatening to foreclose over Shamrock (assuming, for this purpose, the

false premise that Shamrock had a basis for reaching assets of the trust), the transaction would not violate G. L. c. 109A, §§ 7 or 9, because Heritage gave full consideration, $492,000, for its mortgage lien in the same amount. See G. L. c. 109A, § 4; *Harris* v. *Flynn*, 272 Mass. 8, 13-14 (1930). As we had occasion to say on another occasion, it is of the essence of a fraudulent conveyance that there is a "diminution in the assets of the debtor available to creditors." *Richman* v. *Leiser*, 18 Mass. App. Ct. 308, 312 (1984). See *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 624 (1987). Contrast *Citizens Bank & Trust Co.* v. *Rockingham Trailer Sales, Inc.*, 351 Mass. 457, 460-461 (1966).

3. *Other matters.* Shamrock's claim under c. 93A is defeated, if for no other reason, by the judge's findings (he reserved the fact finding function on the c. 93A count to himself): 1) that there was no evidence of collusion or other wrongful motive on the part of the bank; 2) that Shamrock's attachments did not reach the trust property; 3) that the trust was not a sham; and 4) that the bank gave good consideration for the mortgage given to it by the Eresians.

In view of the way we have decided the case, we need not consider FDIC's point on appeal that under 12 U.S.C. § 1823(e) (1988), Shamrock could not challenge the bona fides of the trust or the validity of the bank's loan.

*Judgment affirmed.*