CITY OF WORCESTER *vs.* MANUEL SIGEL, trustee,
& another.[1]

No. 93-P-1472

Worcester. October 14, 1994. - December 29, 1994.

Present: ARMSTRONG, KASS & FINE, JJ.

*Housing Court*, Jurisdiction. *Superior Court*, Jurisdiction. *Jurisdiction*,
   Housing Court, Superior Court. *Chief Administrative Justice. Munici-
   pal Corporations*, Fire department. *Trust*, Beneficiary. *Nominee.
   Penury.*

Where a party challenged the jurisdiction of the Housing Court over en-
   forcement of public safety statutes with respect to nonresidential prem-
   ises, the Chief Administrative Justice for the Trial Court properly, on
   request, transferred the proceeding to the Superior Court docket and
   designated the Housing Court judge to sit as a Superior Court judge.
   [766-767]
Penury is not a defense to an action seeking compliance with a public
   safety statute. [767-768]

CIVIL ACTION commenced in the Worcester Division of the
Housing Court Department on March 1, 1993.

On transfer to the Superior Court Department, the case
was heard by *John G. Martin*, J., sitting under statutory
authority.

*Darragh K. Kasakoff* for the defendants.
*Keith A. Hood*, Assistant City Solicitor, for the plaintiff.

KASS, J. To avert a fire hazard, the fire department of
Worcester, acting under G. L. c. 148, § 27A,[2] § 38A, and

———————

[1]Jerome Sigel, trustee. Manuel Sigel and Jerome Sigel are trustees of
S & G Nominee Trust.
[2]General Laws c. 148, § 27A, provides in pertinent part: "Except as
herinafter provided, no person shall shut off, disconnect, obstruct, remove
or destroy, or cause or permit to be shut off, disconnected, obstructed, re-
moved or destroyed, any part of any sprinkler system . . . or other device
used for fire protection in any building owned, leased or occupied by such

527 Code Mass. Regs. § 9.22 (1992), issued an abatement order on February 9, 1993, to the defendants, Manuel and Jerome Sigel, trustees of the S & G Nominee Trust (the trust). The order required the trust to restore to working condition the sprinkler system at 85 Lafayette Street and 66 Ellsworth Street (the premises), a property the trust owned, and to remove underground storage tanks on the premises.

When the trustees failed to comply with the order, the city brought civil proceedings in the Worcester Housing Court for injunctive relief. A Housing Court judge, sitting by designation under G. L. c. 211B, § 9, as a judge of the Superior Court, enjoined the trust to restore the sprinkler system to working order within thirty days of his order or, within the same period, to remove the combustible material stored in the building. The trust was also enjoined to present to the city (presumably forthwith, although the injunction did not say so) a signed contract for the removal of the underground storage tanks within ninety days. From those orders,[3] the defendants have appealed.

1. *Facts.* A few physical facts, not disputed, will set the stage. The property in question, apparently once a beer brewery, is a large brick building that varies from two to five stories. At all times material, the building had no tenants. In it are combustible materials such as wood pallets, miscellaneous lumber, papers, and cardboard. There are a diesel fuel tank and gasoline tank on the premises underground. Pumps running from the tanks were in a state of disrepair, indicating that they and the tanks to which they ran had not been used for a long time. The premises were close to several residential buildings.

---

person or under his control or supervision without first procuring a written permit so to do from the head of the fire department of the city or town wherein such building is situated . . . ." Section 38A and the regulations deal with underground tanks used to keep inflammable fluids.

[3]The judge's order is mistakenly labelled and referred to in its last paragraph as a preliminary injunction. There is nothing preliminary about the injunction; it was entered after trial and contemplates no further proceedings. The mislabelling was corrected on motion of the defendants.

In October, 1992, the Massachusetts Electric Company shut off the electricity for nonpayment of bills. That, in turn, shut down the sprinkler system and, with the advent of cold weather, the pipes burst and froze.

2. *Subject matter jurisdiction.* Following the filing with the Housing Court of the city's complaint for an injunction directing the trust to restore the sprinkler system to working order, the trust challenged the jurisdiction of the Housing Court over enforcement of public safety statutes with respect to nonresidential premises. The Housing Court judge, harboring a touch of doubt, dispatched a letter on June 11, 1993, to the Chief Administrative Justice for the Trial Court[4] requesting that he be designated a Superior Court judge to try the case and that it be transferred to the Superior Court. That was precisely the sort of action recommended in a series of opinions beginning with *Konstantopoulos* v. *Whately*, 384 Mass. 123, 129-130 (1981), through *Bagley* v *Illyrian Gardens, Inc.*, 401 Mass. 822, 825 (1988); *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. 888, 897 n.10 (1990); *Ryan* v. *Kehoe*, 408 Mass. 636, 642 n.8 (1990); and *Patry* v. *Liberty Mobilhome Sales, Inc.*, 15 Mass. App. Ct. 701, 703 (1983). Before trial began on June 23, 1993, the Chief Administrative Justice transferred the case to the Superior Court docket and designated the Housing Court judge to sit on the case as a Superior Court judge. In the first instance, the designation was made telephonically; documentation of the designation and transfer is dated June 30, 1993, a date which is after the trial, but the written confirmation would operate nunc pro tunc. See *St. Joseph's Polish Natl. Catholic Church* v. *Lawn Care Assocs., Inc.*, 414 Mass. 1003, 1004 (1993); *Patry* v. *Liberty Mobilhome Sales, Inc.*, 15 Mass. App. Ct. at 703-704.

The power to assign judges to courts other than the one to which they were first commissioned is available, among other purposes, to conserve judicial resources by avoiding the waste

---

[4]By St. 1992, c. 379, § 69, § 232, the title of that position, effective July 1, 1995, becomes "Chief Justice for Administration and Management."

which would follow from a trial judge landing on the wrong side of a jurisdictional question. See *Bagley* v. *Illyrian Gardens, Inc.*, *supra* at 825. Contrary to what the trust argues, there is nothing wrong and much right with ad hoc, case specific, interdepartmental transfer of cases and judges. Such transfer is altogether consistent with the legislative design.[5] See G. L. c. 211B, § 9; *Patry* v. *Liberty Mobilhome Sales, Inc.*, 15 Mass. App. Ct. at 703.

3. *The penury defense.* It was an element of the trust's defense at trial, and urged again on appeal, that the trust ought not to be required to comply with G. L. c. 148, §§ 27A and 38A, because the trust was insolvent. While bankruptcy would bring into play the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362(a)(1) (1988), the trust was neither in voluntary nor involuntary bankruptcy.

Penury is not a defense to an action seeking compliance with a public safety statute, any more than it would be a defense to a complaint to abate a nuisance. That, essentially, is what a building is which threatens its neighbors or fire fighters. Similarly, it is no answer to a complaint to comply with zoning requirements or building code requirements (very close to the case at bar) that the owner does not have ready cash to cure the defect. Complying with safety regulations is a responsibility that accompanies the ownership of real property. An injunction properly lies against a person in the defendant's predicament.

In support of their position, the defendants have invoked that line of cases which holds that a person who is too poor to pay a fine ought not to be sent to jail. See, e.g., *Williams* v. *Illinois*, 399 U.S. 235, 241, 244 (1970); *Tate* v. *Short*, 401 U.S. 395, 397-399 (1971); *Commonwealth* v. *Teixera*, 396 Mass. 746, 747, 749 (1986); *Commonwealth* v. *Gomes*, 407 Mass. 206, 212-213 (1990). Those cases declare that it is unlawful to punish with incarceration a convicted person who does not have the money to pay a fine or other judgment expressed in terms of money. The case before us is civil in

---

[5]We intimate no view whether the Housing Court may have had jurisdiction over the subject matter.

nature, and the judgment seeks remediation, not punishment. If the trust does not comply with the injunction, the ensuing contempt proceedings will present the occasion to inquire whether the defendants are truly without assets.

In any event, the balance sheet of the trust would not be the end of the matter. The trust is a nominee trust, i.e., one as to which the beneficiaries exercise the controlling powers, and the action which the trustees may take on their own is very limited. *Shamrock, Inc.* v. *Federal Deposit Ins. Corp.*, 36 Mass. App. Ct. 162, 164 (1994). See also *Penta* v. *Concord Auto Auction, Inc.*, 24 Mass. App. Ct. 635, 639 (1987); *Apahouser Lock & Security Corp.* v. *Carvelli*, 26 Mass. App. Ct. 385, 388 (1988). When questions of liability arise as to nominee trusts, the court may impose liability on the beneficiaries of the trust. *Morrison* v. *Lennett*, 415 Mass. 857, 862 (1993). See also Birnbaum, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass. L.Q. 364, 368 (1976). The sole beneficiary of the defendant, the S & G Realty Nominee Trust, is a partnership, S & G Realty Partnership. It is far from proved that the partnership lacks the means to make the sprinkler system in the premises serviceable once again.

*Judgment affirmed.*