Kaplan, Mitchell H., J.
The plaintiffs have moved this court to enter an order disqualifying the defendants’ attorneys from representing the defendants in this action.[3] The plaintiff Greenleaf Arms Realty Trust I, LLC (GART) is a special purpose entity created by the plaintiff Bagliones to hold their 10.81% beneficial interest in a nominee trust—the Two Technology Drive Nominee Trust (the Trust). The only other beneficial interest in the Trust is owned by the defendant New Boston Huntington VI Limited Partnership (Huntington), which holds an 89.19% interest. The trustees of the Trust are defendants Rappaport, Jr. and Aserkof. During the period relevant to this action, the Trust owned a single commercial property, commonly referred to as Two Technology Drive (the Property). Greenberg represented the Trust in resolving a matter with the sole, former tenant of the Properly: American Superconductor Corporation (ASC). The plaintiffs contend that by representing the Trust and its trustees in the resolution of a matter with ASC, Greenberg also was attorney for GART, and, therefore Greenberg must be disqualified from representing New Boston in this action where the interests of New Boston are adverse to the plaintiffs. While the plaintiffs might be technically correct in their assertion that Greenberg was, in effect, counsel to both beneficiaries of the Trust, they badly misunderstand the circumstances that will cause a court to deprive a party to a law suit of its choice of counsel. Their motion to disqualify is therefore DENIED.
FACTS
The relevant allegations of the plaintiffs’ complaint have been fully set out in the several previous opinions generated by this thoroughly litigated action. * Only a description of the allegations in the complaint and the facts established by the affidavits submitted in connection with this motion necessary to provide context to the motion will be set out here.
The Bagliones were investors in a real estate investment limited partnership managed by various of the New Boston defendants (the Partnership). In 2007, they brought suit against certain of the defendants in connection with that investment. That suit was settled by execution of an agreement pursuant to which their investment in the Partnership was rolled over into direct investments in two commercial properties, one of which was GART’s investment in the Property. In the instant action filed in 2009, the plaintiffs allege, among other things, that various of the defendants made misrepresentations as to the value of the Property during the negotiations for the settlement of the 2007 suit.
The Property had previously been wholly owned by Huntington and was one of the assets that made up the portfolio of properties held indirectly by the Partnership in which the Bagliones had invested. As noted above, the Trustees of the Trust were managers of the New Boston investment entities and management of the Property was unchanged after the settlement of the 2007 suit, except that GART and Huntington entered into a so-called Tenants in Common Agreement (the TIC Agreement) which required GART’s approval for a sale of the Property or its use as collateral, but otherwise left New Boston in control of the management of the Property.
In 2009, ASC was preparing to vacate the Properly at the conclusion of its lease that year. In connection with lease termination, ASC was required to surrender the Property in its original condition, which required the demolition of a HVAC system and remediation of some contaminated materials. Greenberg represented the Trust in negotiating a letter agreement between *306 the Trust and ASC defining the demolition and remediation that ASC would perform and the payment it would make to the Trust for the replacement of the HVAC system. During this representation, Greenberg did not communicate with the Bagliones, but rather dealt exclusively with the Trustees and other New Boston personnel involved in managing the Property. The Bagliones were informed by letter of the demolition and remediation, and that ASC would pay the Trust $925,000 for the loss of the HVAC systems, which could not be distributed to the Trust beneficiaries because it would be used to replace this ventilation system. There is no evidence that the Bagliones knew of Greenberg’s involvement in the matter.
DISCUSSION
An analysis of the question whether an attorney should be disqualified from representing its client in a litigation begins with a consideration of whether a conflict of interest may exist between the attorney and the parly moving for disqualification.
Massachusetts Rule of Professional Conduct 1.9(a)
Under Rule 1.9(a) of the Massachusetts Rules of Professional Conduct, an attorney “who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter” if the person’s interests are materially adverse to the former client’s interests. Mass.R.Prof.C. 1.9(a), 426 Mass. 1342 (1998). A conflict under Rule 1.9(a) exists where two elements are established. See Bays v. Theran, 418 Mass. 685, 691 (1994), and Adoption of Erica, 426 Mass. 55, 61 (1997). First, Rule 1.9(a) requires that there must have been a previous attorney-client relationship. See Erica, 426 Mass, at 61; Bays, 418 Mass, at 691. Second, the current representation must also be substantially related to the former representation and adverse to the interests of the former client. Bays, 418 Mass, at 691; s eeErica, 426 Mass. at61; Twin Caliber (MA) LLC v. Furey, 2012 WL 982999 at *2-*3 (Mass.Land.Ct. 2012).
Did Greenberg Have an Attorney-Client Relationship with the Bagliones as a Consequence of its Representation of the Trust?
To determine whether an attorney-client relationship existed between Greenberg and the Bagliones, the court must decide whether a lawyer’s representation of the trustees of a nominee trust implicitly establishes an attorney-client relationship with the trust’s beneficiaries. This requires a two-step analysis. See Spinner v. Nutt, 417 Mass. 519, 552-54 (1994); Roberts v. Roberts, 419 Mass. 685, 688 (1995); Morrison v. Lennett, 415 Mass. 857, 860 (1993); Bellemare v. Clermont, 69 Mass.App.Ct. 566, 571 (2007). First, the court must decide whether Greenberg actually or effectively represented the Bagliones when he negotiated with ASC on behalf of the Trust. If so, the court must then consider whether the trustees’ attorney owed a duty to the Trust beneficiaries when acting on behalf of the nominee trust. See Spinner, 417 Mass, at 552-54.
A nominee trust is distinct from a traditional trust because it is “created for the purpose of holding legal title to property with the trustees having only perfunctory duties.” Morrison, 415 Mass, at 860 (quoting Johnston v. Holiday Inns, Inc., 595 F.2d 890, 893 (1st Cir. 1979). Unlike a traditional trust, the trustees of a nominee trust lack any power to act unless directed by the beneficiaries. Roberts, 419 Mass, at 688 (1995); Iforrison, 415 Mass, at 861 (the trustees possess “only the barest incidents of ownership”); Bellemare, 69 Mass.App.Ct. at 571; Worcester v. Sigel, 37 Mass.App.Ct. 764, 768 (1994) (“the beneficiaries [who] exercise the controlling powers and the action which the trustees may take on their own is very limited”). Because the trustees of a nominee trust are subject to the beneficiaries’ control, the trustees are commonly treated as “agents for the principals’ convenience rather than as trustees in the familiar fiduciary sense.” Apahouser Lock & Sec. Corp. v. Carvelli, 26 Mass.App.Ct. 385, 388 (1988); Williams v. Milton, 215 Mass. 1, 6 (1913).
The trustee-beneficiary interaction in a nominee trust is commonly treated like a principal-agent relationship rather than a trust relationship, and therefore, the nominee trust is subject to the rules of agency in certain contexts. Roberts, 419 Mass, at 688-89; see, e.g., Morrison, 415 Mass, at 860; Bellemare, 69 Mass.App.Ct. at 571; Apahouser Lock & Sec. Corp., 26 Mass.App.Ct. at 388; Perita v. Concord Auto Auction, Inc., 24 Mass.App.Ct. 635, 640 (1987). In some circumstances, courts have relied upon the theory that the trustee of a nominee trust is merely an “agent for the principals’ convenience” to hold nominee trust beneficiaries directly liable to plaintiffs. See, e.g., Morrison, 415 Mass, at 871; Bellemare, 69 Mass.App.Ct. at 571; Apahouser Lock & Sec. Corp., 26 Mass.App.Ct. at 388. For example, in Bellemare v. Clermont, the Appeals Court held that the trustees were not the “owners” of the properly for purposes of liability where the trust resembled a nominee trust because the beneficiaries maintained control over the trustees. See 69 Mass.App.Ct. at 571. The Court reasoned that the agency relationship suggested that the beneficiaries of nominee trust should be directly liable as “owners” of the trust property despite the trustee’s “record ownership.” See id.
In the present case, when Greenberg represented the Trust in negotiations with its tenant, ASC, it might be said that, as a matter of law, Greenberg was subject to the beneficiaries’ control because they were the true owners of the Property. See Bellemare, 69 Mass.App.Ct. at 571, and Morrison, 415 Mass, at 871. In which case, the principal-agency theory of nominee trust law could support the argument that Greenberg was acting as attorney for GART (and the Bagliones) as well as Huntington (and other of the New Boston *307 defendants) during the negotiations and resolution of the matters involving the termination of the ASC lease. Of course, this principal-agency analysis is at least somewhat confounded by the TIC Agreement which gave Huntington the right to make the management decisions concerning the ASC matter without the approval or consent of GART.
Even if it may be argued that, when Greenberg represented the Trustees of the Trust he was, in effect, acting as attorney for GART (and the Bagliones) as well as Huntington (and New Boston), the court must also-consider whether a fiduciary duty running from Greenberg to GART (and the Bagliones) may be imputed under these circumstances. See Spinner, 417 Mass, at 554. When an attorney has an “independent and potentially conflicting duly” to one client, the Supreme Judicial Court has held that it will not impute an indirect duty to nonclients. Robertston v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524 (1989) (quoting Page, 388 Mass, at 63); see also Logotheti v. Gordon, 414 Mass. 308, 312 (1993) (reasoning that courts should not impose conflicting duties on attorneys). Because of the potential for the interests of a trustee to conflict with the interests of the trust beneficiaries, courts will not impose a duty on the trustees’ attorney to the trust beneficiaries in a traditional trust. Spinner, 417 Mass, at 554; see Page, 388 Mass, at 63; Logotheti, 414 Mass, at 312. Thus, an attorney’s representation of the trustees will not create an indirect attorney-client relationship between the attorney and the trust beneficiaries in a traditional trust. Spinner, 417 Mass, at 554.
In Spinner v. Nutt, the Supreme Judicial Court held that a trustees’ attorney does not owe a duty to the trust’s beneficiaries because of the potential for the attorney’s duty to the trustees to conflict with his duly to the beneficiaries. 417 Mass. at 552. The beneficiaries in Spinner claimed that the trustees’ attorney owed a duly of care to the beneficiaries, who foreseeably relied on the trustees’ attorneys to act on their behalf. Id. at 544. However, the court reasoned that a trustee must often make difficult decisions concerning his or her duties to the trust beneficiaries, which may require the guidance of the trustees’ attorney. Id. at 553. If the trustees’ attorney also owes a duly to the trust beneficiaries, the conflicting loyalties might interfere with the attorney’s role of serving as the trustees’ advisor. Id. at 553-54. Although the interests of the trustees and beneficiaries did not actually conflict in Spinner, the court held that the mere potential for conflict prevented the imposition of a duty of care on the trustees’ attorneys to the beneficiaries, and, in turn, prevented the indirect creation of an attorney-client relationship. Id. at 554.
In the case of a nominee trust, the Spinner analysis does not necessarily apply to the relationship between the trustees and the beneficiaries, and, therefore, the relationship between the attorney for the trustees and the beneficiaries. See Spinner, 417 Mass, at 554. The nominee trust is different than the traditional trust at issue in Spinner because of the underlying principal-agent relationship. See id. The trustees do not exercise the same degree of control over trust assets as traditional trustees do, and, thus, there is less concern that the interests of the trustees and the interests of the beneficiaries will conflict. See id. at 553. In Spinner, the court noted that the trustee may be required to engage in difficult decision-making, but in a nominee trust, the trustee is subject to the beneficiaries’ control. See id. at 553; Roberts, 419 Mass, at 688. indeed, the Declaration of Trust for the Two Technology Drive Nominee Trust, specifically states that each of the trustees’ enumerated powers are “(a)lways subject to the direction of the beneficiaries.” In consequence, if the trustees may act only act as agents for the beneficiaries can the trustees ever be in a position where they must make decisions adverse to the interests of the beneficiaries who control them?
Of course, in this case, the analysis is further complicated by the TIC Agreement where, in theory, the attorneys can be directed as to most matters by Huntington, which is empowered to direct decision making concerning the Property without the consent of GART.
Are the Two Matters Materially Adverse and Was the Former Representation Substantially Related to the Current Representation?
If Greenberg’s former representation of the Trust and its trustees created an attorney-client relationship with GART (and the Bagliones), there is, nonetheless, only a conflict under Rule 1.9(a), if the two matters are also materially adverse and substantially related. See Bays, 418 Mass, at 685; Erica, 426 Mass, at 61. The current representation is obviously adverse to the interests of the Bagliones. The issue of substantial relationship is more nuanced. At first blush, there does not appear to be any substantial relationship between the two engagements. Plaintiffs, however, offer a suggestion (if not any evidence) that there were environmental issues surrounding the property about which they were unaware but Greenberg might have been. In any event, as will be seen, the court need not address that question to decide this motion. Regardless of whether Greenberg’s representation of the Trust amounted to a de jure attorney-client relationship with the Bagliones, it is undisputed that Greenberg had no communications with the Bagliones in connection with the ASC matter. Indeed, the Bagliones complain that Greenberg failed to acknowledge them as clients and inform them of its representation of the Trust and the substance of the negotiations with ASC. They complain that they were unaware of Greenberg’s role in the ASC matter until after they filed the 2009 action.
*308 The Court’s Obligation to Enforce a Violation of Rule 1.9(a)
Even if the court were to find that a Rule 1.9(a) conflict exists, it would not be obligated to disqualify counsel. See, e.g., Masiello v. Perini Corp., 394 Mass. 842 (1985); Mailer v. Maüer, 390 Mass. 371 (1983); Borman v. Borman, 378 Mass. 775 (1979). The trial court has broad discretion to discourage the use of motions to disqualify. Masiello, 394 Mass, at 842. Moreover, courts generally disfavor motions to disqualify and consider disqualification a drastic measure that should not be employed unless absolutely necessary. Erica, 426 Mass, at 58; see, e.g., G.D Matthews & Sons Corp., 54 Mass.App.Ct. at 20; Adrion v. Knight 2008 WL 5111084 (D.Mass. 2008).
In determining whether to disqualify counsel, the court must balance the litigant’s right to choose counsel and the “obligation of maintaining the highest standards of professional conduct and the scrupulous administration of justice.” Mailer, 390 Mass, at 373; Slade, 69 Mass.App.Ct. at 545. In doing so, the Supreme Judicial Court has emphasized that a court should refrain from interfering in the relationship between an attorney and client, and should only grant a motion to disqualify if the attorney’s participation in the current representation “taints” the legal system. E.g., Borman, 378 Mass, at 775; Erica, 426 Mass, at 58; Slade, 69 Mass.App.Ct. at 546; Eaves v. City of Worcester, 2012 UL 6196012 (D.Mass. 2012).
In the present case, despite the possibility of a conflict under Rule 1.9(a), the court must exercise its discretion to deny this motion See, e.g., Masiello, 394 Mass, at 842; Matter, 390 Mass, at 371; Borman, 378 Mass, at 775. Greenberg’s representation of the Trust cannot give rise to any disadvantage to the Bagliones and its continued participation in the current litigation will not adversely impact the administration of justice or taint the legal system. See Borman, 378 Mass, at 775; Erica, 426 Mass, at 58; Slade, 69 Mass.App.Ct. at 546. The Bagliones were unaware of Greenberg’s engagement to act on behalf of the Trust; and, therefore, they could not have relied on Greenberg, transmitted any confidential information to it, or otherwise established a special relationship with the firm that it could use to their disadvantage in the current litigation. See Borman, 378 Mass, at 775; Erica, 426 Mass, at 58; Slade, 69 Mass.App.Ct. at 546.
Several scholars on professional responsibility have commented that even in the face of a clear violation of the rules of professional conduct, disqualification of counsel may be not be required because the “professional ethics rules were intended as statements of policy and not as tools of litigation.” Richard J. Magid, Suing Your Own Client: Disqualification? Don’t Be So Sure, Litigation, 29 Litig. 41, 43 (2003) (citing Panduit Corp. v. Allstate Plastic Mfg. Co., 744 F.2d 1564 (Fed. Cir. 1994)); see Bruce A. Green, Conflicts of Interest in Litigation: The Judicial Role, 54 Fordham L. Rev. 71, 86 (1996) (“[Djisciplinaiy bodies, not courts, are the appropriate fora for punishing professional conduct”). Because judicial enforcement of the rules of professional conduct should only be used “where necessary to ensure societal confidence in the judicial process,” any potential violation of Rule 1.9(a) in this case ought not be remedied through a disqualification. To the extent that, on the facts presented by this case, any party feels aggrieved by the conduct of counsel, any investigation of the possibility of a violation of the Rules will be left to the Office of Bar Counsel. See Magid, supra, at 43; see, e.g., Borman, 378 Mass.’at 775; Erica, 426 Mass, at 58; Slade, 69 Mass.App.Ct. at 546.
ORDER
For the foregoing reasons, the plaintiffs’ motion to disqualify counsel for the defendants is DENIED.

Nhe defendants are all represented by Attorney Mark Berthiaume and other attorneys associated with the Greenberg Traurig law firm. Defense counsel will be referred to as “Greenberg” for simplicity.