NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-569

WELLS FARGO BANK, NATIONAL ASSOCIATION, trustee,[1]

vs.

ESTHER W. NGOTHO.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

An assignee of a mortgage filed a complaint in the Land Court seeking to remove a cloud on title to mortgaged property. A Land Court judge dismissed counterclaims of the mortgagor, and another judge allowed the assignee's motion for summary judgment, dismissed additional counterclaims, and denied other motions of the mortgagor. We affirm.[3]

Background. On May 25, 2004, the defendant mortgagor, Esther Ngotho signed an adjustable rate, interest-only note for $470,000, secured by a mortgage, to finance her purchase of a home in Beverly. The note had a maturity date of June 1, 2034.

_____

[1] For ABFC 2004-OPT5 Trust, ABFC Asset-Backed Certificates, Series 2004-OPT5.

[2] Also known as Esther Waigumo Ngotho.

[3] We acknowledge the amicus briefs submitted by Dawn Thomson, pro se; Registrar of Southern Essex County John L. O'Brien, pro se; Gary Yard, pro se; and Jay Lively, pro se.

The mortgage did not state a maturity date but referred on its face to that of the note.  Ngotho soon defaulted on payments and obtained a Chapter 7 bankruptcy discharge on April 12, 2006.

In November 2006, the note and mortgage originator, Option One Mortgage Corporation (Option One), sent Ngotho a "right to cure" letter pursuant to G. L. c. 244, § 35A.  The letter informed Ngotho of her default and instructed her that the default could be cured with a payment of $7,639.76 (amount of missed payments plus late charges).  The next month, Option One sent a letter notifying Ngotho of the following:  "[T]he note is hereby accelerated and the entire balance [of $482,160.19] is due and payable forthwith and without further notice."  The letter also indicated that Ngotho could reinstate the loan by bringing it current, that she was not personally liable due to the bankruptcy, and that Option One may proceed to foreclose if the default was not cured.  Ngotho did not cure the default.

Ten years later the plaintiff, Wells Fargo Bank, National Association (Wells Fargo), as trustee under a pooling and servicing agreement (PSA), took possession of the note and recorded an assignment of the mortgage by Option One (which by then had changed names).  Wells Fargo published a notice of foreclosure sale, see G. L. c. 244, § 14, but four days before the sale, Ngotho recorded an affidavit purportedly "clarifying the chain of title."  G. L. c. 183, § 5B (§ 5B).  The § 5B

2

affidavit asserted that Ngotho's mortgage was also accelerated in 2006, and therefore became unenforceable either (1) in 2011 by operation of the obsolete mortgage statute, G. L. c. 260, § 33, or (2) in 2012 by operation of the statute of limitations, G. L. c. 106, § 3-118. The affidavit also claimed that Ngotho held title free and clear of any encumbrance.

Wells Fargo filed a complaint in the Land Court seeking a declaration that the § 5B affidavit was void and not a cloud on title. Ngotho answered and asserted five counterclaims, three of which -- claiming discharge of the mortgage and damages for predatory lending, violation of G. L. c. 93A, and discrimination -- a judge dismissed pursuant to Mass. R. Civ. P. 12 (h) (3), 365 Mass. 754 (1974). Wells Fargo then moved for summary judgment on the complaint and remaining counterclaims, in which Ngotho sought declarations (1) that Wells Fargo lacked standing to foreclose, and (2) quieting title. Ngotho responded by filing two motions to dismiss the complaint and a cross motion for summary judgment, all citing Wells Fargo's alleged lack of standing.

A different judge denied Ngotho's motions, denied an emergency motion to intervene that was filed by the Registrar for Southern Essex County, and allowed Wells Fargo's motion for summary judgment. A judgment entered declaring the § 5B affidavit of no force and effect. Ngotho filed unsuccessful

3

motions for reconsideration, to vacate the judgment pursuant to Mass. R. Civ. P. 60 (b) (4), 365 Mass. 828 (1974), and for transfer of her counterclaims to a court with jurisdiction. Ngotho now appeals, and we affirm.

Discussion. 1. Standards of review. We review the rulings on the motions to dismiss de novo. Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 43 (2022). We also review de novo the rulings on the motions for summary judgment, HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 326 (2022), and to vacate. Dumas v. Tenacity Constr. Inc., 95 Mass. App. Ct. 111, 114 (2019). The denial of the motions for reconsideration and transfer are reviewed for an abuse of discretion. See Audubon Hill S. Condominium Ass'n v. Community Ass'n Underwriters of Am., 82 Mass. App. Ct. 461, 470 (2012) (reconsideration); Worcester v. Sigel, 37 Mass. App. Ct. 764, 766-767 (1994) (interdepartmental transfer exercised on "ad hoc, case specific" basis). An abuse of discretion is an error in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives. L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

2. § 5B Affidavit and Limitation of Action. Affidavits may be recorded under § 5B "to explain a set of existing facts relevant to the chain of title where the facts had not been stated explicitly in the property record." Bank of Am., N.A. v.

4

Casey, 474 Mass. 556, 565 n.19 (2016) (Casey).  The "affidavit must be limited to facts that explain what actually occurred, and are not inconsistent with the substantive facts contained in the original document."  Id. at 565.  The affidavit here concluded that action on the mortgage was time-barred.

The affidavit did not comport with the governing statute and improperly clouded title to the mortgaged property.  Contrary to the conclusory allegations in the affidavit, the note and mortgage show that Ngotho signed a thirty-year loan in 2004, secured by a mortgage that she used to buy a home.[4]  In 2006, the note was accelerated.  As a matter of law that acceleration did not affect the maturity date of the mortgage, however, because the two instruments have "separate viability and enforceability."  Nims v. Bank of N.Y. Mellon, 97 Mass. App. Ct. 123, 127 (2020).  See LaRace v. Wells Fargo Bank, N.A., 99 Mass. App. Ct. 316, 329 (2021).  We need not decide whether the note became unenforceable when discharged in bankruptcy, Nims,

---

[4] The second judge correctly "assumed a legal debt existed" where this information appeared in the § 5B affidavit, counterclaims, and summary judgment materials.  "[A] wet ink note" was not required to prove the debt, and no credibility determinations were involved.  Though the second judge did use the words "find" and "findings," we are not persuaded that she misapplied the summary judgment standard as Ngotho alleges.  Later, in her decision to deny reconsideration or relief under rule 60 (b) (4), the judge clarified that the initial "[d]ecision was based on the undisputed documentary record and the court's application of the governing law to those documents."

5

supra at 129, or when Ngotho asked to see it, as Ngotho argues in the brief, because enforceability of the mortgage did not depend on Ngotho's continuing liability on the note. Id. See Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 575-576 (2012), and cases cited (mortgage is transfer of title to secure note or obligation; title defeasible when debt is paid). Never modified, the mortgage will mature on June 1, 2034. Thus, the obsolete mortgage statute and statute of limitations simply have "no bearing on Wells Fargo's ability to enforce the mortgage." LaRace, supra at 329. The second judge neither ignored nor misunderstand the law when she concluded that "the statements set forth in the 5B Affidavit regarding the obsolete mortgage statute [and statute of limitations] are incorrect as a matter of law, act to cloud title, and are of no force and effect." See Bevilacqua v. Rodriguez, 460 Mass. 762, 771 (2011) ("there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect").

3. Standing of Wells Fargo. Wells Fargo had standing to file its complaint. Having recorded "a single assignment from the recordholder of the mortgage," U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 651 (2011), Wells Fargo held title to the property until the mortgage was satisfied or foreclosed, Abate v. Fremont Inv. & Loan, 470 Mass. 821, 832 (2015), and cases

6

cited, at which point title would pass either to Ngotho, as mortgagor, or to a purchaser following a sale. Wells Fargo had "a definite interest" in whether it can pass clear title following a sale. Bonan v. Boston, 398 Mass. 315, 320 (1986). The "actual controversy" presented by Ngotho's recording of the § 5B affidavit, therefore, is what gave Wells Fargo standing to bring this suit. G. L. c. 231A, § 1. Ngotho's myriad arguments to the contrary "obliterate[] the distinction between" the concept of standing and the merits of her title challenges, Abate, supra at 826, and were properly rejected by both judges.

4. Jurisdiction. The first judge aptly discerned that questions of predatory lending, violation of G. L. c. 93A, and discrimination were outside the "strictly limited jurisdiction" of the Land Court on this preforeclosure request for a declaration under G. L. c. 231A.[5] Riverbank Improvement Co. v. Chapman, 224 Mass. 424, 425 (1916). See U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 429 (2014) (discussing preforeclosure action in Superior Court). Even after foreclosure, such claims are limited to the Superior, Housing, Probate and Family, or Supreme Judicial Courts, see G. L. c. 93A, § 9 (1); G. L. c. 151B, § 9; G. L. c. 183C, § 18 (a), (b), (d); Bank of Am., N.A. v. Rosa, 466 Mass. 613, 623-624

---

[5] There was no request for equitable relief, contrary to Ngotho's assertion in the brief.

7

(2013), or in the Land Court in an action to try title, Abate, 470 Mass. at 826, but the Legislature's exclusion of the Land Court from the jurisdictional statutes we have just listed, and the exclusion of Ngotho's counterclaims from the grant of G. L. c. 185, § 1, means that the Land Court had no authority to adjudicate the claims before foreclosure. Skawski v. Greenfield Investors Prop. Dev. LLC, 473 Mass. 580, 587-588 (2016); Bagley v. Illyrian Gardens, Inc., 401 Mass. 822, 824-825 (1998). Dismissal of the counterclaims pursuant to rule 12 (h) (3) was appropriate, see HSBC Bank USA, N.A. v. Matt, 464 Mass. 193, 199 (2013), and the second judge was not "ignoring her obligation as a Court of Equity to give complete justice" when she declined to consider them.

5. Standing of Ngotho. As the second judge explained, Ngotho has no standing to raise claims that the assignment violated the PSA or that Wells Fargo violated the PSA and laws governing trusts. See LaRace, 99 Mass. App. Ct. at 327 n.13. Thus, that judge did not err by "ignoring" those documents.

To the extent Ngotho seeks to challenge the denial of the Registrar's motion to intervene, the argument has not been properly briefed and is waived. Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). Even if we considered the claim, Ngotho has no standing as the Registrar's motion was

8

not hers and only the party "aggrieved by" an adverse ruling "may appeal therefrom."  G. L. c. 231, § 113.

At bottom, the question before the Land Court was whether the § 5B affidavit was effective to cloud title.  Because the statements in the affidavit were inconsistent with the substantive facts in the original note and mortgage, the second judge correctly declared the affidavit null and void.  Casey, 474 Mass. at 565.  This determination quieted Wells Fargo's title and disposed of Ngotho's second counterclaim.  As the second judge faced no "serious jurisdictional issue" when Ngotho finally asked for a transfer, Konstantopoulos v. Whately, 384 Mass. 123, 129 (1981), she did not abuse her discretion in her denial of Ngotho's belated motion seeking that relief.  See Joseph's Polish Nat'l Catholic Church v. Lawn Care Assocs., 414 Mass. 1003, 1004 (1993) ("Such requests should be promptly made").  The second judge also did not abuse her discretion in denying the motions for reconsideration and to vacate.  The judgment was not void for all the reasons we have explained.

To the extent that Ngotho makes additional arguments, "they 'have not been overlooked.  We find nothing in them that requires discussion.'" Commonwealth v. Sosa, 493 Mass. 104, 124 n.12 (2023), quoting Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

Judgment affirmed.

Orders denying motions for transfer, reconsideration, or to vacate the judgment affirmed.

By the Court (Desmond, Hand & Hodgens, JJ.[6]),

Assistant Clerk

Entered:  March 26, 2024.

---

[6] The panelists are listed in order of seniority.